Emmett B. McDANIELS, Plaintiff-
Respondent,

v.

Floyd E. HALL, Defendant-Appellant.

No. 24832.

Kansas City Court of Appeals.

Missouri.

Feb. 5, 1968.

Rehearing Denied April 1, 1968.

Miller & O'Laughlin, George T. O'Laughlin, Kansas City, for appellant.

Allan R. Browne, Ennis, Browne & Martin, Kansas City, for respondent.

CROSS, Judge.

Plaintiff sued to recover $5,000.00 damages for bodily injuries allegedly sustained in a collision between automobiles driven by the respective parties. Upon trial to a jury plaintiff's case was submitted solely under the rear end doctrine. The jury returned a unanimous verdict in favor of defendant, upon which judgment was duly entered. Thereafter, and more than thirty days after filing date, plaintiff's motion for a new trial was sustained on the ground the trial court erred in giving defendant's Instruction No. 4 submitting the issue of plaintiff's contributory negligence. Defendant has appealed.

In a single point defendant contends that the trial court erred in granting a new trial on the ground it had erred in giving Instruction No. 4 because: (a) there was ample substantial evidence from which the jury could find that plaintiff was contributorily negligent in either of the two respects submitted therein; and (b) the instruction correctly declared the law on the submitted grounds as prescribed by MAI. The text of Instruction No. 4 reads as follows:

"Your verdict must be for the defendant whether or not defendant was negligent if you believe:

First, plaintiff either:

failed to keep a careful lookout, or suddenly turned to the left at a time when such movement could not be made with reasonable safety, and

Second, plaintiff's conduct, in any one or more of the respects submitted in paragraph First, was negligent; and

Third, such negligence of plaintiff directly caused or directly contributed to cause any damage plaintiff may have sustained.

(M.A.I. 28.01, M.A.I. 17.05, M.A.I. 17.06 (Modified)"

Plaintiff has filed a motion to dismiss the appeal on the ground that defend-

ant has violated Civil Rule 83.05(e), V.A. M.R. in that he has stated his appeal point purely in the abstract without reference to the specific grounds upon which the submission of contributory negligence was predicated or reference to what the "ample substantial evidence" in support thereof might be. The omission of which plaintiff complains is not of sufficient gravity to warrant the drastic action plaintiff requests of us. We deny the motion and proceed with our review of the case.

In determining whether Instruction No. 4 was supported by evidence we must consider the evidence in a light most favorable to defendant and give him the benefit of all favorable inferences reasonably to be drawn from all the evidence, and disregard plaintiff's evidence unless it tends to support the grounds of contributory negligence submitted by the instruction. Highfill v. Brown, Mo.Sup., 340 S.W.2d 656; LaFata v. Busalaki, Mo.Sup., 291 S.W.2d 151; Martin v. Effrein, 359 Mo. 1150, 225 S.W.2d 775. We shall state the facts accordingly.

The collision occurred on February 24, 1965, on the northbound roadway of Van Brunt boulevard in Kansas City. Van Brunt is an expressway at the place of the collision, with two lanes for northbound travel and two lanes for southbound travel, separated by a median strip some 35–40 feet wide. The accident occurred at about 6:15–6:30 A.M. It was then still dark, there was no moon, and there were no street lights in the vicinity, but it was clear and there was no precipitation, fog, mist, snow or rain to obscure visibility. An eight inch snow had fallen during the previous evening and part of the night. The snowplow had been along to clear the course for northbound travel before the accident occurred and had undertaken to clear both of the northbound lanes. In clearing the right hand or outside lane, the plow had encountered a small compact car, a Sunbeam, which had been parked or abandoned on the extreme right portion of the traveled surface. The obstructing vehicle forced the plow to curve out and go around it, as it occupied approximately one-half of the right hand lane—the extreme outer half. The cleared surface was still covered with a skim of snow and was "some" slick and slippery. The accident occurred at a place where the highway gradually curved first toward the east and then in a northerly direction.

The automobiles of both plaintiff and defendant got onto Van Brunt at its intersection with Elmwood by making right turns from Elmwood after stopping for traffic signals. When the signals changed, plaintiff's car moved out first, followed by defendant's. After the two automobiles got onto Van Brunt, defendant continued to follow plaintiff in the right hand lane, directly behind him, separated by a distance of seven to ten car lengths. Both cars were traveling approximately 15 to 20 miles per hour. After traveling in that manner for approximately a block and a half, defendant then moved into the left lane and increased his speed to approximately 20 to 25 miles per hour. After so traveling another block and a half, defendant had nearly come abreast of plaintiff's car and was about to pass it. When the front of defendant's car was about ten feet from the rear of plaintiff's car, plaintiff suddenly swerved his vehicle to the left to avoid the Sunbeam, and then "tried to cut back" when he saw defendant's car. These movements developed into a "swing" or skid which carried the vehicle partly into the left lane, and into collision with defendant's automobile, whereby the right front portion of defendant's car came in contact with the right rear of plaintiff's. Defendant explained that "all of a sudden he came around to my lane" and that "after his left rear had got into my lane he started to spin or slide or whatever it was and then, of course, his right rear came onto my lane just as I was right on him." The actual impact of the cars occurred in the left lane, and happened before plaintiff's car had got alongside the Sunbeam. The force of the impact threw

plaintiff's car into the Sunbeam and turned it completely around. It "ended up" headed south "a little bit ahead of the Sunbeam." Defendant's car came to rest in a snow bank on the left side of the roadway.

Plaintiff testified that he first saw the Sunbeam when his automobile was about 50 feet from it; and that about the same time (when he was 50 feet from the Sunbeam) he swerved to the left to go around it. He stated: "So of course when I saw this little car, I knew that I had to move out to my left to get around it. I put my signal lights on and started to pull out, and I noticed this car in back of me, in my rearview mirror, the lights of it, and I pulled out and was straightened up to go by it—The little Sunbeam." His car moved about 30 feet from the time he saw the Sunbeam until there was contact with defendant's car. When that occurred, plaintiff's car was still about 20 feet (south) from the Sunbeam. The collision took place within one or two seconds after he turned out around the Sunbeam. Plaintiff admitted that at the time of the impact his car was straddling the center line that separates the two lanes.

Before plaintiff made his "swerve out around the Sunbeam" he was aware there was a car coming from the rear. He testified, "I saw lights in my rear view mirror", that he also had a left outside rear view mirror, and that he could see defendant's car "coming up" in both mirrors. As to whether defendant was traveling in the left hand or right hand lane immediately prior to the collision plaintiff's testimony was inconsistent. He testified both ways. At one point he testified that he thought Mr. Hall was in the lane to his left. Later he testified that defendant was in the right hand lane; that he was in "the same lane as I was, behind me". Plaintiff took the final position in his testimony, (and it is his position in this appeal) that defendant was traveling immediately behind him in the right hand lane at the time he swerved to go around the Sunbeam.

Immediately after the accident and upon inquiry by defendant as to what had oc-

curred, plaintiff said "it happened so fast" he didn't know for sure. He admitted that he saw defendant coming up behind him, and made the statement that "When I was moving over, I saw you and I tried to cut back." When interviewed by a police officer making a report of the accident plaintiff stated that he was northbound on Van Brunt at 20 to 25 miles per hour and swerved to avoid a number three vehicle and was struck by Mr. Hall's automobile. Plaintiff's "explanation" for the accident "as far as he was concerned", was his "swerve to get around the Sunbeam."

Defendant contends that the submission of whether plaintiff failed to keep a careful lookout was supported by evidence in two separate aspects, to-wit: (1) evidence from which the jury could find that plaintiff could have seen the Sunbeam sooner than he did and (2) evidence that although plaintiff knew defendant's car was approaching from the rear, he negligently failed to observe and discover that it was traveling in and about to pass him in the left lane. As constituting evidence to support the postulate that plaintiff could have seen the Sunbeam before he got to within fifty feet of it, defendant points to his own testimony, in which he stated that with his own lights he could see a vehicle ahead "probably 20 or 30 car lengths, maybe. I'm just kind of guessing." The foregoing is not a sufficient evidentiary basis for a jury finding that plaintiff could have seen the Sunbeam from a distance greater than fifty feet. Even if it be assumed that plaintiff's headlights had illuminating power equal to defendant's generous "guess", that circumstance alone would not justify the finding in question. "Whether the failure to keep a lookout at any time or place constitutes negligence depends upon the conditions and circumstances and is usually a jury question." Cox v. Moore, Mo.App., 394 S.W.2d 65. Under this principle, the visibility of an object on the highway and the distance at which it is discoverable by proper lookout would, in the absence of direct testimony based on actual observa-

tion, depend upon the surrounding circumstances and conditions. There is a lack of evidence in this case to show certain material facts and conditions necessary for a proper consideration of the question by the jury. There is no showing as to the degree of curvature in the highway, except the generality that it was "gradual". That factor conceivably could affect the direction and effectiveness of the headlight beams. Likewise, and to the same effect, there is no evidence to show whether the highway was uphill, level or downhill. There is no evidence to show the color of the Sunbeam, whether light or dark, a consideration significantly affecting its visibility. It is not shown whether or not the Sunbeam had a cover of snow, the presence of which might effectively camouflage the vehicle. Other than testimony that there were no street lights in the vicinity of the collision, evidence is lacking to show whether there were any sources of illumination additional to plaintiff's headlights. It is of material significance that defendant himself did not claim to have seen the Sunbeam prior to the collision. We rule that the submission of the lookout issue was not supported by substantial evidence that plaintiff was negligent in failing to see the Sunbeam sooner. See Hawkeye-Security Insurance Co. v. Thomas Grain Fumigant Co., Mo.App., 407 S.W.2d 622; O'Neill v. Claypool, Mo.Sup., 341 S.W.2d 129; Levin v. Caldwell, Mo. Sup., 285 S.W.2d 655.

There is, however, an abundance of evidence from which the jury could have found that plaintiff failed to keep a careful lookout in that he negligently failed to observe that defendant's car was traveling in and about to pass him in the left lane. As our courts have frequently declared, it is the continuous duty of a person operating a motor vehicle on the public streets and highways to exercise the highest degree of care at all times and all places thereon to keep a careful lookout for persons, objects and other vehicles on the highway. Mo. Digest, Automobiles, ☜150. With respect to that duty, the Supreme Court has said that the "object and purpose of the strict requirement that persons operating motor vehicles keep a proper lookout upon public streets and highways is that they may acquire knowledge of the presence of other persons and objects on such streets and highways, and an awareness of dangerous situations and conditions. It is only because of that knowledge and awareness that the operators of motor vehicles may take appropriate precautionary measures to avoid injury to themselves and other persons within an existing area of peril." Miller v. St. Louis Public Service Co., Mo. Sup., 389 S.W.2d 769, 771.

There is substantial, convincing evidence that plaintiff was derelict in his above defined duty, in that he failed to utilize available means at hand to "acquire knowledge" of defendant's position on the highway and to become aware of the dangerous situation that could result from a sudden movement of his automobile from its forward course to the left. It is in evidence that just before the two cars collided defendant had been traveling in the left lane for one and one-half blocks and had come almost abreast of plaintiff's car to pass it. There can be no doubt that prior to swerving around the Sunbeam, plaintiff knew there was a car *somewhere* behind him. He testified: "I saw lights in my rear view mirror." He said that he also had an outside rear view mirror and he admitted that he could see defendant's car "coming up" in both mirrors. And, although plaintiff testified (not without self-contradiction) that defendant's car was then in the right hand lane, he stated immediately after the accident that, "When I was moving over, I saw you and I tried to cut back."

In the light of the evidence favorable to defendant, reasonable minds could conclude: defendant's car was, in fact, in the left hand lane when plaintiff made his swerve around the Sunbeam; that when plaintiff made that maneuver he either thought defendant's car was in the right hand lane behind him or was oblivious of its true position on the highway; that plain-

tiff had the opportunity and means at hand to learn defendant's actual position on the highway either by looking in his rear view mirrors or by looking directly to his rear in the direction of the car he knew was behind him; and, that plaintiff negligently failed to look carefully or effectively by either means and thus disabled himself from taking appropriate measures in the situation of peril which had developed. In Lands v. Boyster, 417 S.W.2d 942, the Supreme Court held that the failure of a left turning motorist to look into the windshield mirror, when admittedly that measure would have revealed an automobile behind him, would support an inference that he failed to maintain a proper lookout. In Myers v. Searcy, Mo.Sup., 356 S.W.2d 59, the Court said, "The driver contemplating a left turn must keep a vigilant lookout * * * for vehicles which may be following him;". Also see Reed v. Shelly, Mo.App., 378 S.W.2d 291, where it is stated that " * * * a driver who intends to turn left must make a proper observation to the rear to ascertain whether another vehicle is approaching from the rear in such close proximity that a left turn cannot be made with reasonable safety."

Plaintiff undertakes to argue that the issue of his failure to keep a careful lookout should not have been submitted to the jury because there is no evidence to show that such a failure contributed to cause the collision. Plaintiff insists there is no showing that he had "sufficient time and distance and the means and ability to have avoided the collision—even had he maintained an even better lookout than he did." The argument is entirely beside the point at issue for the reason it is based on the unacceptable evidentiary premise that defendant's car never had been in the left lane, but that at all times prior to the accident, and to plaintiff's actual knowledge, it was traveling behind plaintiff in the right hand lane. For that reason, plaintiff says, he could not have acquired any better knowledge of defendant's whereabouts by any better lookout and could have done nothing

to avoid the accident. Simply stated, it is plaintiff's position that he was "rear-ended" and could have taken no measures to avoid it. The foregoing concept of the evidence is a version favorable to plaintiff, is in direct conflict with defendant's unequivocal testimony that he was in the left lane before the collision, and, under the rules of appellate review, will not be considered in deciding the submissibility of the lookout issue. We have determined that question under evidence which we consider to be favorable to defendant, and from which the jury could have found that had plaintiff exercised a proper lookout he could have discovered that defendant's car was in the left lane, and with that knowledge could have avoided the collision by refraining from executing the sudden movement of his vehicle to the left.

We rule that the trial court did not err in submitting the issue of plaintiff's contributory negligence on the hypothesis that he failed to keep a careful lookout.

■ We next consider whether there was substantial evidence to support the alternative hypothesis of plaintiff's contributory negligence submitted by Instruction No. 4, namely, that he "suddenly turned to the left at a time when such movement could not be made with safety." The fact that plaintiff "suddenly turned or swerved to the left" to go around the Sunbeam is so thoroughly established by the evidence we have heretofore detailed, in particular, plaintiff's own testimony, that further comment thereon is unnecessary. And, in our opinion, the jury had warrant to make the additionally required ultimate finding that the move in question was at a time when it could not be made with safety—from evidence showing that plaintiff's left turn was a sudden maneuver in the direction of defendant's car which was then traveling in the left lane and had approached almost abreast of plaintiff's vehicle; that from the time plaintiff made his left turn until he collided with defendant, only one or two seconds had elapsed and he had traveled only 30 feet; that plaintiff's sudden left

turn was made at a time when the traveled roadway surface was in a slick and slippery condition; and the further fact that soon after plaintiff made his left turn he saw defendant approaching and then "tried to cut back". From these established facts the jury could reasonably believe that plaintiff's original left turn carried him into suddenly discovered danger of colliding with defendant, (previously discoverable by a careful lookout), which he attempted to avert by a countermove back to the right, and that those manipulations on the slick, slippery, snow-covered roadway exerted natural resultant forces which caused the rear of plaintiff's car to swing or skid to the left into the left lane in the path of defendant's car. The jury could have additionally concluded that plaintiff was negligent in suddenly turning to the left when it was unsafe to do so and that such negligence was an act "such as to enter into and form the direct, producing and efficient cause of the casualty, and absent which the casualty would not have happened." Lands v. Boyster, Mo. Sup., 417 S.W.2d 942.

In arriving at the foregoing conclusion we have given due consideration to plaintiff's counter-contention that there was no evidence to justify an instruction on "turning" because it was not shown that his car actually turned *into the left lane* or that the front end of it ever went *into the left lane,* but that, instead, the evidence showed that *the rear end of \his car skidded around into the left lane.* Therefore, plaintiff argues, Instruction No. 4 should have conformed to the evidence and hypothesized the rear end skid, if there had been evidence of prior negligence causing it (which plaintiff denies), instead of submitting the hypothesis of a negligent left turn as a proximate cause of the accident. This proposition is not supported by Missouri decisions. The Supreme Court has specifically ruled that in cases where skidding of an automobile is shown to have been caused by a negligent act occurring prior in time

to the commencement of the skidding, it is not necessary that a verdict-directing instruction hypothesize the fact of skidding, but that the instruction is sufficient if it requires the finding of the negligent act or acts which caused the skidding. In Davis v. Werremeyer, Mo.Sup., 377 S.W.2d 319,[1] where defendant's automobile skidded sideways to the wrong side of the road and collided with another vehicle, the court held that it was not essential that plaintiff's verdict-directing instruction have hypothesized the fact "that defendant skidded across the center line (as distinguished from driving or guiding the vehicle across)". The court said:

"Skidding was not the *cause* of the collisions, but was the *result* of defendant's antecedent negligence. * * * The act relied upon to form the basis of a finding of negligence in No. 1 (failure to keep a lookout) occurred in time prior to the commencement of the skidding. Skidding was a subsidiary evidentiary fact. Under the evidence defendant, as a result of his failure to keep a lookout, suddenly found it necessary to apply his brakes hard. * * * Facts from which the jury could find that the cause of the movement over was negligence were sufficiently hypothesized. * * * In No. 1 the *cause* of the crossing of the center line (failure to keep a lookout, followed by hard jamming of the brakes) was the issue tried and submitted; the crossing and the skidding in so doing was a mere evidentiary fact—not an element vital to the plaintiff's case—and the negligent act which caused the skidding-crossing was required to be found."

Plaintiff has cited two Missouri cases, Wray v. King, Mo.App., 385 S.W.2d 831 and Branch v. Gordon's Transports Inc., Mo.App., 375 S.W.2d 418. Those cases do not involve the point at issue. Nor does the Massachusetts case, Correira v. Boston Motor Tours, 270 Mass. 88, 169 N.E. 775, also cited by plaintiff, touch the question.

1. The MAI Committee comments (p. 133) that "a very complete exposition of the skidding doctrine is found in Davis v. Werremeyer, 377 S.W.2d 319 (Mo.1964)."

Plaintiff has also advanced the theory that defendant's own evidence negated such an occurrence as that he "suddenly turned to the left." Seeking to support this suggestion, plaintiff directs attention to the following questions and answers made by defendant on cross-examination: "Q. You never saw him at any time turn out in a left diagonal to go around the Sunbeam? A. No. Q. Did you ever see the front of McDaniels' car pull out to the left from his position that he had been travelling near the right snow bank? A. No. I never did see it move." Looking to the whole of defendant's testimony on the subject thus explored, we do not consider it subject to reasonable interpretation as an admission that plaintiff did not in fact turn or make a move to the left to go around the Sunbeam. The import of defendant's testimony is that he did not *see* what plaintiff did before the collision, as illustrated by the following cross-examination questions and answers: "Q. Now, you didn't actually see what Mr. McDaniels did before the collision, did you, what his car did? A. No, outside of just all of a sudden he came around to my lane. Q. I say in answer to my question, you didn't see with your own eyes what Mr. McDaniels' car did before the collision, immediately before the collision, did you? A. No." Considering the surrounding circumstances it is reasonable to believe that defendant was not in a position or had opportunity to see or observe the initial left movement of plaintiff's car, or for that matter the "cut-back" movement. It was then dark, the roadway was slippery, and defendant was occupied with the operation of his own car as he was about to pass plaintiff. It would appear doubtful that any substantial illumination from defendant's headlights was then being directed on the front of plaintiff's car, considering the relative position of the vehicles. It is reasonably probable that the rear end of plaintiff's car was a physical obstruction to his view of the front end at the time in question. Under those conditions it is a matter of substantial doubt whether a movement of plaintiff's front wheels sufficient to alter the course of the vehicle would be in fact visible to defendant. We reject plaintiff's theory of "negation" and adhere to our view that defendant is entitled to the benefit of the abundant evidence plaintiff himself has furnished to establish his sudden left turn around the Sunbeam.

 Finally, defendant submits that Instruction No. 4 is a proper declaration of substantive law and that its form satisfies MAI requirements. We first observe that with the exception of the language "suddenly turned to the left at a time when such movement could not be made with reasonable safety" the instruction, inclusive of the lookout element, faithfully follows the text of MAI 28.01, Contributory Negligence—generally. There is no MAI form for the sudden turn submission. Consequently it was necessary to formulate the desired element in accordance with Rule 70.01(e), which requires that modifications or instructions be simple, brief, free from argument and that they shall not submit or require findings of detailed evidentiary facts. The basis for the sudden turn submission is V.A.M.S. Section 304.019, which provides in pertinent part: "No person shall stop or suddenly decrease the speed of or turn a vehicle from a direct course or move right or left upon a roadway unless and until such movement can be made with reasonable safety and then only after the giving of an appropriate signal in the manner provided herein." The foregoing portion of Section 304.019 was construed in Reed v. Shelly, Mo.App., 378 S.W.2d 291, as follows: "The language of the opening paragraph of Section 304.019 and cases construing similar statutes convince us that at least two duties are imposed upon a motorist who intends to turn left in the circumstances here presented. First, he must ascertain that such movement can be made with reasonable safety; then, he must give an appropriate signal of his intention to change direction. Giving a signal does not dispense with the necessity of determining that a left turn can be made with reason-

able safety." Inasmuch as two separate and distinct duties are prescribed by Section 304.019, it is our view that a negligent failure to observe either thereof, or both, may be asserted as a ground for recovery by a plaintiff, or as a ground of contributory negligence by a defendant. Therefore, upon a sufficient evidentiary showing that plaintiff violated his statutory duty to determine that the left turn in question could be made with reasonable safety, it was the defendant's privilege and the court's duty to submit that act as a ground for finding plaintiff guilty of contributory negligence. We believe that the language chosen for the submission sufficiently hypothesizes a violation of the statute and adequately satisfies MAI requirements. We find no prejudicial error in the instruction.

The order and judgment granting a new trial is reversed and the cause is remanded with directions to reinstate the verdict of the jury and enter judgment thereon in favor of the defendant.

All concur.