Hallie **FURLOW**, Plaintiff-Respondent,

v.

**LACLEDE CAB COMPANY** and Frank G. Huttig, and Deluxe Cab Company and Raymond Clark, Sr., Defendants-Appellants.

Nos. 34724, 34735.

Missouri Court of Appeals,
St. Louis District,
Division Two.

Oct. 16, 1973.

Motion for Rehearing or Transfer Denied
Nov. 13, 1973.

Application to Transfer Denied
Jan. 14, 1974.

374

Morris A. Shenker, Cordell Siegel, Donald L. Schlapprizzi, St. Louis, for defendants-appellants.

Eugene B. Weisman and Walter S. Berkman, Clayton, for plaintiff-respondent.

KELLY, Judge.

This appeal from a jury verdict and judgment thereon in favor of the Respondent and against all Appellants in the sum of $10,000.00 presents four points for review. All appellants join in the following three points: 1) prejudicial error in the giving and reading to the jury Instruction No. 5, respondent's verdict directing instruction with respect to the Laclede Cab Company and Frank G. Huttig; 2) failure of the trial court to grant a new trial by reason of the intentional concealment of a prior claim and prior leg condition of one of the jurors which the juror failed to reveal when inquiry on voir dire examination of the jury required revelation of same; and 3) failure of the trial court to grant

a new trial because of the employment of a mathematical or per diem argument by respondent's counsel with reference to pain and suffering during final argument. Appellants Deluxe Cab Company and Raymond Clark, Sr., present as a fourth point, the excessiveness of the verdict.

We shall dispose of appellants' second, third and fourth contentions of error prior to considering their complaints relative to respondent's verdict director instruction.

During the voir dire examination of the prospective jurors inquiry was made by counsel whether any of the jurors had ever suffered an injury in any kind of an automobile accident, or in any other type of accident, where they were hurt and a claim for payment of money was made. It was explained that this question was meant to encompass a fall on the sidewalk, slipping "on a piece of spinach at the supermarket," or other instances of that sort. It was further explained that by the term "claim" counsel intended to include a situation where "because of an automobile collision, an incident that happened on a bus, or with a taxicab, or a train, or a fall on the sidewalk, or a fall in a place of business, or a Workmen's Compensation matter," someone was hurt and a claim was initiated or somebody came out to see him and some payment was made. Counsel for Laclede Cab Company and Frank G. Huttig further pointed out that if there was any question in the mind of any one of the jurors in this respect to tell counsel about it; otherwise, if they did not and it was later learned that one or more of them had such an experience the results of the trial might have to be aborted and a new trial had. Juror No. 15, Hattie Torrince, sat through this interrogation without response. All appellants raised the failure to disclose prior claims in their motion for new trials filed in the cause and a post-trial evidentiary hearing was conducted. Mrs. Torrince was produced as a witness and testified relative to this point. She testified that she remembered the question whether or not anyone may have had a claim wherein they were injured and admitted that she had a fall down some steps on or about the 13th day of April, 1968, at the Pruitt-Igoe Housing Project; that she had reported it to the manager of the St. Louis Housing Authority and wanted to know if they would pay the doctor bills. She injured her left leg or foot on that occasion and went to Homer G. Phillips Hospital for treatment. No one contacted her thereafter and she receieved no compensation for her injuries nor for the doctor's bills. Whether the Hartford Insurance Company was involved or was the insurance company for the Housing Authority she did not know. Also, in December, 1971, she was a patient at the Homer G. Phillips Hospital for a cellulitis of her right leg for a period of a little more than one week. Although she remembered other jurors responding affirmatively to those questions and relating their experiences she did not respond because "That slipped my mind." She was also permitted to testify that these prior physical difficulties did not enter her mind at the time she was in the jury room deciding the case. The medical records clerk of the Homer G. Phillips Hospital testified that she could find no emergency record for the occurrence of April 13, 1968, but that she had brought into court the record of the hospital relative to Mrs. Torrince's hospitalization of November 14, 1971, and discharged the same day with a diagnosis of "Cellulitis, right leg." The hospital record also revealed that the juror had been admitted into medical service on May 1, 1971, for thrombophlebitis which later turned out to be cellulitis. The clinical record showed an entry of December 8, 1971, with a diagnosis of "Cellulitis of right leg," and chief complaints "swollen leg." [1]

1. This case was tried, and the interrogation on voir dire took place, on April 3, 1972, 4 years after her fall at the housing project but less than 5 months after her last visit to the hospital for cellulitis.

The granting of a new trial where a juror fails to reveal on voir dire examination that he has been involved in an accident, made a claim or sustained injuries of a type for which the plaintiff seeks damages depends upon whether the concealment was *intentional* and primarily determination of that question must be left to the sound discretion of the trial court. Beggs v. Universal C.I.T. Credit Corp., 387 S.W.2d 499, 503 [7] (Mo. banc 1965); 22 Mo.D. New Trial ▇▇▇ We are loath to hold that the trial court, having been afforded the opportunity to observe the errant juror during direct and cross-examination on the issue under consideration, has abused its discretion in reaching its conclusion that the concealmenet, if such it was, was not intentional. We are here obviously dealing with an unsophisticated female juror inexperienced in the legal ramifications of her misfortune in falling and sustaining what was a minor injury for which she received no monetary relief. We rule this point against appellants.

Appellants' next point directs itself to argument wherein respondent's counsel attempted to have the jury admeasure the physical pain of the plaintiff on the basis of a mathematical formula. That the argument of respondent's counsel was improper was readily recognized by the trial court as was evidenced by the sustaining of the objection lodged by counsel for the appellants and directions to the jury to disregard it. The motion for mistrial was denied, and we find no error in this respect. Appellants rely on Faught v. Washam, 329 S.W.2d 588 (Mo.1959) as authority that argument of this kind requires reversal. However, we conclude that the case is distinguishable. The court, in Faught v. Washam, supra, pointed out that the combination of four different trial errors led to the reversal; these were, 1) asking the jurors to put themselves in plaintiff's shoes; 2) a job offer argument; 3) the mathematical formula argument; and 4) the cumulative nature of the other three. "Without undertaking to determine whether any single matter of which we have treated, *standing alone,* would constitute reversible error * * *, we are firmly of the opinion that, in their totality, they do." (Emphasis supplied.) 329 S.W. 2d l.c. 604 [30]. In Goldstein v. Fendelman, 336 S.W.2d 661, 667 (Mo.1960) the court, while acknowledging the impropriety of inviting the jury to admeasure damages for pain on a mathematical formula, refused to reverse a judgment and distinguished Faught v. Washam, supra, on the basis that counsel did not commit the other trial errors found in that case in order to reverse on the grounds of cumulative error. Mistrial should be granted only in those cases where the complaint is directed to an error so prejudicial that its effect can be excised in no other way. Brownridge v. Leslie, 450 S.W.2d 214, 216 [3] (Mo.1970). The trial court is the best judge of whether the error in this instance could be cured by steps short of a mistrial, and such matters are peculiarly within the discretion of the trial court. Brownridge v. Leslie, supra. From the record we do not find that the trial court abused its discretion in this respect and therefore rule this point against the appellants.

Appellants Deluxe Cab Company and Raymond Clark, Sr., complain of the excessiveness of the verdict; we do not find that the size of the verdict does violence to our collective consciences. Respondent was 49 years old at the time of trial. She sustained injuries to her right knee, her right hip and her lower back. These were soft tissue injuries and did not involve fractures of any of the bones of her body. She came under the treatment of a physician and continued to receive heat treatments and therapy for 6 to 7 weeks. On her first visit to the physician, the night of the collision, she appeared at his office on crutches and complained of her right knee, right hip and lower back. Physical examination revealed "spastic disc tenderness, low back muscles with marked limitation of movement and spasticity;" bruises of her right hip region and right

knee with pain radiating down the right lower extremity. Her knee was taped with an elastic bandage and medicine was prescribed for relaxation of the muscles and relief from pain. Her right knee was swollen from her injury. The doctor testified that she continued on crutches for 6 to 7 weeks and that when he last saw her on March 31, 1972—three days prior to trial—she then complained of pain and stiffness in her right knee, with inability to completely flex her right knee. She further complained that she could not completely flex her right leg and that the looseness of her right knee caused her to fall at times. She still complained of stiff low back muscles and although she could flex her back at right angles to her trunk, on forward motion she had a severe pain in her back. In his opinion these conditions and complaints he observed and reported at the examination of March 31, 1972, were permanent. His charges were $216.00. His diagnosis was "severe sprain of back."

In addition to her physical injuries, respondent sustained loss of wages from the date of the accident, August 18, 1969, to October 24, 1969, a period of 9 weeks and 3 days. She was employed at the Chase-Park Plaza Hotel as supervisor in the dish-washing department. According to her immediate superior she was an excellent worker, dependable, and missed very few opportunities to work overtime. Her work requires her to lift trays or dishes off a side tier truck onto a scraping table, the height of a normal working table. She has to remove the silver out of a movable trough and place it into a box used to convey the dishes and silver through the dishwasher. She also has to lift racks of 20 to 25 glasses off the floor onto a table to be pushed onto the conveyor belt and into the washing machine. According to Mrs. Furlow's testimony she now experiences pain in her back and her hip when she pushes the trucks and lifts trays, etc. while on the job. Her boss allows her to sit down now whenever she wants to and she still takes medicines and sleeps on a hot water bottle.

At the time of the occurrence Mrs. Furlow was earning $11.57 for an 8 hour day, 5 days a week. She was paid every other week. In the 9 week period she lost a minimum of $543.39, not allowing anything for overtime for which she was paid time and a half. If, as appellants suggest, she be allowed 1 day per week overtime at time and a half, she would have lost additional overtime income of $156.24,[2] or a total loss of wages of $699.63. Her lost wages plus medical bills total $915.93.

While the award of the jury may have been generous we do not conclude that it was the result of "passion and prejudice on the part of the jury" and amounted to misconduct on their part as these appellants contend. The jury and the trial judge felt this verdict was appropriate and we do not find that they were in error. We therefore rule this point against appellants Deluxe Cab Company and Raymond Clark, Sr.

The final point raised by all of the appellants is that the respondent's verdict director with respect to the negligence of the Laclede Cab Company and the cab driver Frank G. Huttig is prejudicially erroneous. Laclede Cab Company and its driver Mr. Huttig base their contentions on an allegation that the instruction failed to include the crucial and essential language of Section 304.015(5)(1) RSMo 1959, V.A.M.S., that the driver of a motor vehicle travelling on a three lane roadway may not move from the lane in which he is travelling "until the driver has first ascertained that such movement can be made with safety."

Instruction No. 5 tendered by the respondent and read to the jury by the court, is as follows:

### "INSTRUCTION NO. 5

"Your verdict must be for plaintiff and against defendants Laclede Cab Company

2. The record shows that respondent averaged 15.9 hours overtime in the 14 two-week pay periods prior to April 18, 1969.

and its driver Frank G. Huttig if you believe:

First, defendant Huttig moved his cab from his lane of traffic when it was not safe to do so, and

Second, defendant Huttig was thereby negligent, and

Third, such negligence either directly caused damage to plaintiff or combined with acts of Raymond Clark to directly cause damage to plaintiff."

Respondent pleaded a violation of Section 304.015(5)(1) RSMo 1959, V.A.M.S., in her petition as an allegation of specific negligence on the part of all defendants; she chose, however, to submit her claim against the Deluxe Cab Company and Raymond Clark, Sr., on excessive speed, an alternatively pleaded charge of specific negligence.

Since this appeal does not attack the sufficiency of the evidence to make a submissible case against any one of the appellants, the factual situation may be briefly stated.

On Monday, August 18, 1969, at sometime around 2 p. m., respondent, who had just left the Chase Hotel where she had picked up her vacation check, boarded a Deluxe Cab Company cab driven by Raymond Clark, Sr., at the corner of Kingshighway Boulevard and Maryland Avenue in the City of St. Louis. Upon entering the cab she sat in the front seat between the driver and a male passenger. The cab thereupon proceeded northwardly in the curb lane for northbound traffic on Kingshighway towards Delmar Boulevard.

Kingshighway Boulevard is a north-south major traffic artery in the City of St. Louis and consists of six traffic lanes; three northbound and three southbound. The weather was nice, and the streets dry.

There was much conflict in the testimony relative to the factual circumstances of the collision. Each of the cab drivers contended the other pulled into the lane in which he was then operating his respective cab. Mr. Huttig's version was that the point of impact was in the second lane from the curb whereas Mr. Clark testified that the Laclede cab was four feet in front of his cab when all of a sudden Mr. Huttig swerved the Laclede cab into the curb lane in front of him and stopped. According to Huttig the collision occurred about 50 feet south of Washington Boulevard when he was driving 10 to 15 miles per hour. Mr. Clark testified that he had been travelling between 15 and 25 m. p. h. along Kingshighway Boulevard but at the time of impact had slowed to 8 to 10 m. p. h., but admitted in his deposition that prior to the collision he was travelling 25 to 30 m. p. h. before he applied his brakes in an effort to avoid the collision and at the same 25 to 30 m. p. h. speed at impact. In his deposition, Mr. Clark also testified that when the Laclede cab veered to its right the front of the Deluxe cab he was driving was practically in the middle of Washington Boulevard. Patrolman John McGalin, offered as a witness by appellants Laclede Cab Company and Mr. Huttig testified that the accident occurred at 520 North Kingshighway Boulevard, 100 feet south of Washington Boulevard. There was also a conflict in the evidence with respect to whether Mr. Huttig had activated the right turn signal on his cab prior to starting to change lanes. Mr. Huttig testified that he had turned the right turn signal on when 75 feet south of Washington Boulevard because he intended to pull to the right and pull up in front of the George Washington Hotel where there was a debarking zone offset into the curb on the east side of Kingshighway and discharge his passenger. Mr. Clark testified that he saw no lights on the rear of the Laclede cab prior to its change of course. Mr. Huttig further testified that prior to the collision he looked into his rear view mirror, but that the mirror did not cover the area immediately to the right rear of the Laclede cab. Respondent was unable to give any testimony relative to the collision since she was not paying attention to the surrounding cir-

cumstances. Appellants all agree that the impact between the cabs was slight—a scraping which did little damage to either cab. Mr. Clark did admit that he applied his brakes "as fast as he could" to avoid the collision, but denied that he slammed them on, and that both he and his passengers were thrown forward in the cab.

The jury, however, could have found from the evidence that as the Deluxe cab with respondent in it approached Washington Boulevard, it was still travelling northwardly in the curb lane on Kingshighway Boulevard and traffic was heavy. The Laclede cab driven by appellant Frank G. Huttig was also proceeding northwardly on Kingshighway Boulevard in the lane immediately adjacent to the curb lane and in the immediate vicinity of the Deluxe Cab in which respondent was riding. Mr. Huttig, who was transporting a passenger bound for the George Washington Hotel situated on the northeast corner of Washington and Kingshighway Boulevards, suddenly moved the Laclede cab from the center lane eastwardly into the curb lane occupied by the Deluxe cab. Mr. Clark applied his brakes in such a fashion that respondent was thrown forward against the radio in the center of the cab where she was seated, striking her right knee against it. The wheels on the right side of the Deluxe cab scraped against the curbing on the east side of Kingshighway Boulevard and dented the hub-caps of both wheels on that side. The right rear fender of the Laclede cab had come into contact with the left front fender of the Deluxe cab.

Respondent chose to try and submit her case on the theory that it was the Laclede cab driven by Mr. Huttig which moved from the second northbound traffic lane on Kingshighway Boulevard into the path of the other northbound cab operated by Mr. Clark in the curb lane on Kingshighway Boulevard, when it was not safe to change lanes. She also chose to submit her case on the traffic regulations enunciated in Section 304.015(5)(1) RSMo 1959, for roadways divided into three or more clearly marked lanes for traffic. The Statute reads:

"5. Whenever any roadway has been divided into three or more clearly marked lanes for traffic, the following rules in addition to all others consistent herewith shall apply: (1) *A vehicle shall be driven as nearly as practicable entirely within a single lane and shall not be moved from such lane until the driver has first ascertained that such movement can be made with safety.*" (Emphasis supplied).

Viewing the facts most favorably to the respondent's submission, as we must, we find that we have here a "change of lane" situation with respect to the appellants Laclede Cab Company and Mr. Huttig. There is no applicable MAI Instruction for this type of case, and therefore an instruction submitting this theory of negligence must be formulated in accordance with Rule 70.01(e), V.A.M.R., which requires that such instructions must be simple, brief, impartial, free from argument, and neither submit nor require findings of detailed evidentiary facts. Such instruction must submit ultimate facts, not abstract statements of law. State ex rel. Burgess v. Neaf, 439 S.W.2d 190, 194 [3–5] (Mo.App.1969). The ultimate fact submitted in this instruction is the movement of the Laclede Cab from its lane of traffic when it was not safe to do so *and* that Mr. Huttig, the chauffeur, was thereby negligent.

Neither the appellants nor respondent have cited a case which has passed on the form of this instruction. However, our research led us to McDaniels v. Hall, 426 S.W.2d 751, 756 [7] (Mo.App.1968), which we believe disposes of this contention.

In McDaniels, supra, both parties were travelling northwardly on a dual highway with two northbound and two southbound traffic lanes divided by a median strip. The defendant was following behind the plaintiff in the outer or right hand lane, separated by a distance of 7 to 10 car

lengths, and both travelling at a speed of approximately 15 to 20 m. p. h. After they had proceeded a distance of about one and one-half blocks, defendant moved from the outer northbound lane into the inner northbound lane, increased his speed to 20 to 25 m. p. h. and started gaining on plaintiff. When defendant reached a point where he was about to pass, and when the front of his car was about 10 feet from the rear of plaintiff's car, plaintiff suddenly swerved to the left to avoid a compact car abandoned on the extreme portion of the travelled surface of the outer northbound traffic lane. Plaintiff then tried to cut back to the right when he saw defendant's car, but this movement resulted in plaintiff's car carrying him partly into the inner northbound traffic lane so that the right front of defendant's car came into collision with the right rear of the plaintiff's car.

Plaintiff in McDaniels, supra, submitted on the rear end doctrine, and defendant tendered and the trial court read the following contributory negligence instruction:

> " 'No person shall stop or suddenly decrease the speed of or turn a vehicle from a direct course or move right or left upon a roadway unless and until such movement can be made with reasonable safety and then only after the giving of an appropriate signal in the manner provided herein.' The foregoing portion of Section 304.019 was construed in Reed v. Shelly, Mo.App., 378 S.W.2d 291, as follows: 'The language of the opening paragraph of Section 304.019 and cases construing similar statutes convince us that at least two duties are imposed upon a motorist who intends to turn left in the circumstances here presented. *First, he must ascertain that such movement can be made with reasonable safety;* then, he must give an appropriate signal of his intention to change direction. Giving a signal does

not dispense with the necessity of determining that a left turn can be made with reasonable safety.' Inasmuch as two separate and distinct duties are prescribed by Section 304.019, it is our view that a negligent failure to observe either thereof, or both, may be asserted as a ground for recovery by a plaintiff, or as a ground of contributory negligence by a defendant. Therefore, upon a sufficient evidentiary showing that plaintiff violated his statutory duty to determine that the left turn in question could be made with reasonable safety, it was the defendant's privilege and the court's duty to submit that act as a ground for finding plaintiff guilty of contributory negligence. We believe that the language chosen for the submission sufficiently hypothesizes a violation of the statute and adequately satisfies MAI requirements." (Emphasis supplied).

As we have noted supra, Section 304.-015(5)(1) RSMo 1959 specifically applies to traffic flow on any roadway which "has been divided into three or more clearly marked lanes for traffic," and requires that a vehicle shall be driven as nearly as practicable entirely within a single lane and shall not be moved from such lane until the driver has first ascertained that the movement can be made with safety. The words "reasonable safety" which appear in Section 304.019 RSMo 1959 are not present in Section 304.015(5)(1) RSMo 1959; nor are the words "until the driver has first ascertained" in Section 304.019 RSMo 1959, although they have been inserted therein by judicial interpretation in Reed v. Shelly, supra.

We conclude that Section 304.-015(5)(1) RSMo 1959 intended to impose a duty on a motorist operating a motor vehicle on a three lane highway to continue within that lane until he has "ascertained" [3] that the movement can be made

---

3. Webster's Third International Dictionary (Unabridged) (1971) p. 126 "2: to find out or learn for a certainty (as by examination or investigation): make sure of: DISCOVER:"

with safety and any failure to so ascertain constitutes a violation of his statutory duty. We also believe that because of the nature of traffic flow on three lane highways where passing on the left or the right is a common practice, the legislature intended to place the burden on the motorist using said highways to exercise the highest degree of care to ascertain that he might move from one lane to another only when the change of lane might be made with safety. We hold, however, that it is not necessary to include this phrase in a verdict directing instruction submitting this theory of negligence. Whether appellant Huttig, in the exercise of the highest degree of care, took the necessary actions to ascertain that it was safe to move from the one lane to the other is a matter of evidence, not an ultimate fact required to be submitted in accordance with the form prescribed by MAI.

██ We are not impressed with the argument of appellants Laclede Cab Company and Mr. Huttig that this instruction in this form would permit the jury to find that Mr. Huttig actually did ascertain that the lane change could be made with safety and yet still find that he was negligent. This issue should have been handled in argument since it is evidentiary in nature, and counsel may argue the applicable law to aid the jury in deciding what constitutes negligence under the circumstances and the evidence in the case. Furthermore, the evidence in this case fully supports a finding that Mr. Huttig did not ascertain that a change of lane could be made with safety if the testimony of Mr. Clark that Mr. Huttig swerved in front of him when only 4 feet in front of the Deluxe cab is believed. The defense of these appellants was not that they had ascertained the safety of their maneuver prior to changing

lanes; rather, their evidence was that it was Mr. Clark who made the lane change and collided with the rear of the Laclede cab, in the second northbound traffic lane of Kingshighway Boulevard. The only effort Mr. Huttig made to determine the safety of changing lanes was a glance in his rear view mirror, which mirror he candidly admitted had a blind spot in it for any cars which might be to his immediate right rear. With such knowledge, it is irrefutable that doing nothing further than looking into that rear view mirror to ascertain the presence of a vehicle in the area not subject to disclosure by means of the rear view mirror would authorize the jury to find the ultimate fact that he was not in the exercise of the highest degree of care in the operation of the cab when he moved from the second lane to the curb lane and the instruction was therefore in proper form. The thrust of the statutory duty is not, as these appellants contend, "to ascertain" but is that the operator of the motor vehicle continue travelling within a single lane and not move from such lane until the movement can be made with safety. Nor does this instruction make the appellants insurors of the respondent's safety. The jury must find that they were negligent in changing lanes when it was not safe to do so. We rule this point against appellants Laclede Cab Company and Mr. Huttig.

In disposing of the contentions of the Laclede Cab Company and Mr. Huttig we have also disposed of the contentions of appellants Deluxe Cab Company and Mr. Clark with respect to Instruction No. 5.

The judgment of the trial court is affirmed.

SMITH, P. J., and SIMEONE and GUNN, JJ., concur.