George THOMAS, Plaintiff-Appellant,

v.

Harold FITCH, Defendant-Respondent.

No. 8819.

Springfield Court of Appeals.

Missouri.

Dec. 18, 1968.

Eugene E. Reeves, Ward & Reeves, Caruthersville, for appellant.

Stanley A. Grimm, Rader & Grimm, Cape Girardeau, for respondent.

TITUS, Judge.

A jury in the Circuit Court of Stoddard County returned its verdict in favor of defendant, thus denying plaintiff's claim that, through no fault of his own, defendant's negligence had produced the casualty in question and caused him $9,500 in damages. After plaintiff's motion for a new trial was overruled, he perfected this appeal.

The litigants agree the collision occurred the afternoon of November 17, 1967, when the right front corner of defendant's westbound Chevrolet struck the left rear corner of plaintiff's westbound Ford at or near a "T" intersection on Highway 84 approximately 9/10ths of a mile west of Hayti, Missouri; that the highway is a two-laned bituminous surfaced east-west thoroughfare 24 feet wide, which was wet at the time of the accident; and that the stem of the "T" intersection is a graveled roadway extending south from the highway. From this point on (tested by the recountings of the parties) their versions of what transpired are so divergent one might suspect the single incident involved was, in fact, two separate and distinct occurrences.

According to the plaintiff, he was driving west on the highway at 25 miles per hour and was being followed by defendant's automobile. "I [overtook and] passed a car going west * * * and then [defendant overtook and] passed [the same car]. When [defendant] passed him there was another car coming east, and [defendant] had to get in behind me [to avoid the oncoming eastbound car], and I looked in the [rear view] glass and [defendant] was kind of sliding crossways, and then he straightened up. Well, I tried to speed up to get out of [defendant's] way * * * but [defendant] couldn't miss me, he hit me right in the back end." Plaintiff asserted his car was completely in the right lane at the time of impact. He denied his automobile had ever crossed the center line

after overtaking and passing the westbound car, and further denied he had undertaken or intended to turn left at the intersection onto the roadway extending south from the highway.

By defendant's version, he had not encountered any eastbound traffic nor had he overtaken and passed any westbound vehicles between the time he left the Hayti city limits and the time of the collision. Defendant estimated he was driving 45 to 55 miles per hour and plaintiff 15 to 25 miles per hour. Plaintiff, according to defendant, was driving entirely in the right or north traffic lane as defendant moved into the left or south lane preparatory to passing the plaintiff's Ford, and "as the front of my car approached the rear of [plaintiff's] vehicle, he pulled into the left-hand lane * * * more or less straddling the center line of the highway * * * and I honked my horn and applied my brakes, but I skidded into the rear left corner of his car." Defendant testified the speed of plaintiff's automobile "decreased somewhat" from the time he first started to pass and that no signal of any sort was given by plaintiff "indicating a turn was going to be made." Defendant estimated the impact occurred two or three feet left or south of the center line of the highway and five or ten feet, "possibly more," east of the east edge of the intersection. At the time of collision, defendant said, the left front tire of plaintiff's car was north of the center line while its left rear tire was two feet south of the center line of the highway.

On appeal plaintiff first contends the trial court erred in excluding the testimony of James Williams, a Negro, proffered as a witness by plaintiff. Defendant claimed surprise and objected to Williams testifying because plaintiff, when his deposition was taken thirteen days before trial, failed to reveal the identity of Mr. Williams as a

person having knowledge of the accident. During the course of the deposition plaintiff was asked if he knew "of any witnesses that were there at the scene of the accident that saw this accident take place," and replied, "I know a couple boys that was working right there on the side of the road, they say they seed it." Inquiry was made as to the identity of these witnesses and plaintiff responded, "I don't know their names, offhand. * * * I don't exactly know his name, I just know him when I see him." The question, "Are these Negroes that supposedly saw the accident?" elicited plaintiff's unqualified answer, "No." Defendant's counsel advised the trial judge an investigation had been made in "the area" of the accident to ascertain if anyone living or working there had witnessed the collision, and the only one discovered was a Mr. Faulkner who subsequently testified for and corroborated defendant's version of the matter. Interrogated by the court outside the jury's presence, plaintiff testified the reporter who took the deposition "put it [the 'No' answer] down wrong" because, "Sure, I knowed they was Negroes." Plaintiff acknowledged the other questions and answers in his deposition had been correctly recorded. Concerning the identity of Williams when the deposition was taken, plaintiff told the trial judge, "I knew his name was Williams all [the] time, but I didn't know the other, I just knowed him by Williams." Plaintiff also stated he had advised his lawyer concerning Williams' identity before the deposition was taken and of the fact that Williams had agreed to "be a witness [and] tell what you know."

Plaintiff concedes a trial court is vested with broad discretion to either admit or reject the testimony of a witness whose name, though known to the party, was not revealed to his adversary by answers to written interrogatories.[1] Never-

1. Keyte v. Parrish, Mo.App., 399 S.W.2d 601, 605(7); Aulgur v. Zylich, Mo.App., 390 S.W.2d 553, 556–557(2, 3); Central & Southern Truck Lines v. Westfall GMC Truck, Inc., Mo.App., 317 S.W.2d 841, 847–848(5); Annotations: Discovery—Names of Witnesses, 37 A.L.R.2d 1152–1165, and Discovery—Disclosure of Witnesses, 27 A.L.R.2d 737–739.

theless, plaintiff argues a trial court does not have the same discretionary authority to exclude a witness whose identity was not revealed "during the heat of taking a deposition" as it does when the identity is not made known by answers to written interrogatories propounded under Rule 56.[2] We do not agree.

█ Rule 61, "Enforcement of Discovery by Parties," enumerates the penalties a trial court "may" impose upon a party who refuses to obey discovery orders, abstains from answering interrogatories, or wilfully fails to appear for a deposition after proper notice. Such punitory measures are designed to cope with patent floutings of the discovery rules, rather than with secretive violators whose misdeeds remain concealed until the cause is at trial. But a dearth of precise rules aimed at wily miscreants does not grant them license, through answers that evade and give short shrift to the truth, to foil and frustrate the courts in their office of dispensing justice, for if the rules of discovery are to be effective, it follows of necessity that appropriate sanctions be imposed for disobedience thereof. Combellick v. Rooks, Mo. (banc), 401 S.W.2d 460, 464. Rule 57 gives any party the right to "take the testimony of any person, including a party, by deposition upon oral examination," and provides, "the deponent may be examined regarding any matter * * * including * * * the identity and location of persons having knowledge of relevant facts." Written interrogatories, by Rule 56.01(a), "may relate to any matters which can be inquired into under Rule 57." Surely the rights conferred by Rules 57 and 56 would be sorely naked and unavailing if they could be enforced only against deponents or interrogatees who refuse to appear or answer, for false or evasive answers and responses in half-truths are as thwarting and as contemptuous of the rules as no answers at all. Neither Rule 61, nor any other rule for that matter, pointedly clothes the trial court with authority to exclude the testimony of a witness whose identity is not disclosed in answers to interrogatories or at a deposition, or to exclude the use of statements given by the interrogating party which were not returned with written answers. Yet, as seen by the authorities in footnote 1 and Combellick v. Rooks, supra, 401 S.W.2d at 464–465(10), courts do have the preoption to exclude the testimony of a witness not identified in interrogatory answers and discretionary power to prohibit use of the interrogator's statements omitted from answers to interrogatories. We cannot perceive any reason a trial court should not have the same discretion to enforce the sworn duty of a deposing party "to testify the whole truth" [Rule 57.21; § 492.290], as it has to enforce the obligation of a party to "fully in writing under oath" [Rule 56.01(a)] answer questions put by written interrogatories. Therefore, we rule that a trial court is invested with the same judicial discretion to exclude the testimony of a witness whose identity is improperly concealed at a deposition upon oral examination as it possesses to exclude the testimony of a witness not properly identified by answers to written interrogatories. Cf. Greenberg v. Karris, 80 Ill.App.2d 270, 225 N.E.2d 490, 492(3); Arkansas Valley Industries v. Giles, 241 Ark. 991, 411 S.W.2d 288, 290(5).

█ It is not our intent to imply by this holding, however, that a trial court should or must, in each instance, exclude the testimony of every witness whose name or identity is not disclosed by interrogatory answers or at depositions. Answers given in depositions and to interrogatories are not pleadings, "and while in some circumstances the answers should have a limiting effect on the scope of proof at the trial, the trial court should be given a wide discretion to prevent the party propounding the interrogatories [or asking the questions at a deposition] from being misled and prejudiced and to protect the answering

2. References herein to rules and statutes are to Missouri Supreme Court Rules of Civil Procedure, V.A.M.R. and RSMo 1959, V.A.M.S.

party against his own mistake or inadvertence." Critcher v. Rudy Fick, Inc., Mo., 315 S.W.2d 421, 429(11). The trial judge in this case used extreme care and caution to ascertain all of the facts before excluding the testimony of Mr. Williams. In the circumstances of this case, we are of the opinion the trial court properly exercised its judicial discretion in excluding this witness from testifying.

■ Plaintiff also argues that even though the exclusion of a witness' testimony might be proper under some circumstances because of the failure to disclose his identity at a deposition, "it should not be enforced under circumstances such as prevail in the case at bar where the plaintiff revealed information sufficient to prompt * * * defense counsel to submit an interrogatory which called for the names of witnesses." No authorities are cited to this point, and we know of no rule, statute or case law which requires a party to verify by written interrogatories what he has been told under oath by his adversary at a deposition. There is a general presumption that acts have been rightfully performed in good faith, as opposed to any presumption of fraud, misconduct or illegality [State ex rel. Kugler v. Tillatson, Mo. (banc), 312 S.W.2d 753, 757(7)], and in the absence of evidence to the contrary, the truthfulness of a deponent's statement and testimony will be presumed. 31A C.J.S. Evidence § 126, pp. 236–237. Defendant had an absolute right to rely upon plaintiff's sworn deposition testimony that he did not know the witness Williams by name, only by sight, and that the witnesses who "supposedly saw the accident" were not Negroes. Greenberg v. Karris, supra, 225 N.E.2d at 492(2). Defendant was not obliged to pursue the matter through repetitious questioning in written interrogatories.

■ Instruction number 4 (primarily M.A.I. 28.01 with additions from M.A.I.

17.06 and 17.13) charged the jury apropos of plaintiff's contributory negligence if he either "failed to signal his intention to turn, or drove on the wrong side of the road." Plaintiff did not object at trial to the giving of this instruction, but did so in his motion for new trial because "there was no substantial evidence that plaintiff intended to turn and in the absence of such evidence said portion of the instruction convicting plaintiff of contributory negligence if he 'failed to signal his intention to turn' was erroneous." Point II of Points Relied On in plaintiff's brief tacks otherwise by asserting it was error to give Instruction 4 because "(a) There was not sufficient circumstantial evidence to support defendant's submission of plaintiff's failure to signal his intention to turn," and "(b) Defendant submitted a conflicting 'wrong side of the road' theory which the evidence did support thus violating the rule that the circumstances offered by the person with the burden of proof cannot support inconsistent conclusions." Defendant's motion to strike point II(b), supra, and the accompanying argument in plaintiff's brief is proper and is sustained. Rule 70.02 provides, "Specific objections to instructions shall be required in motions for new trial unless made at trial" [Hartley v. Oidtman, Mo.App., 410 S.W.2d 537, 545(8)], and Rule 79.03 admonishes, "If any specific objections to instruction have not been made at the trial before submission to the jury, then such specific allegations of error in instructions must be set forth in the motion for new trial to preserve the error for review." We are additionally bound by Rule 83.13(a) which prescribes that apart from matters not here applicable, "no allegations of error shall be considered in any civil appeal except such as have been presented to or expressly decided by the trial court." Point II(b) was not made either at the time of trial or in the motion for a new trial. It is first mentioned in plaintiff's brief, which is too late to preserve it for review on appeal.[3]

3. McConnell v. Pic-Walsh Freight Company, Mo., 432 S.W.2d 292, 301(17); Larson v. Alton & S. Ry. Co., Mo.App., 431 S.W.2d 687, 691(3); Lands v. Boyster,

■ We are somewhat perplexed as to the intendment of point II(a) in plaintiff's brief, as there is no disputing the fact plaintiff did not signal an intention to turn. If, however, we commingle point II(a) with the objection made to the instruction in the motion for new trial and blend in the arguments advanced by plaintiff in his brief, we surmise plaintiff is contending there was not sufficient evidence, direct or circumstantial to, justify a finding that plaintiff intended turning off the highway onto the graveled roadway *and* that even though plaintiff did permit his automobile to be operated onto the wrong side of the highway (which theory plaintiff says there was evidence to support), he was not required to signal such a movement because the statutory requirement thereof applies only if a motorist is turning from one highway onto another at an intersection. Of course, in determining whether the giving of Instruction 4 was proper, we must consider the evidence in the light most favorable to the defendant and give him the benefit of all favorable inferences reasonably to be drawn from all the evidence, and disregard plaintiff's evidence unless it tends to support the grounds of contributory negligence submitted by the instruction.[4]

■ Plaintiff's testimony that he did not turn and never got onto the wrong side of the highway is a version of the evidence favorable to plaintiff which is in direct conflict with defendant's evidence, and is not to be considered in deciding the submissibility of the issue that plaintiff failed to signal his intention to turn. "Intention" is a state of mind seldom capable of direct proof and ordinarily is determinable only through logical deduction from proven facts. The question of intention is usually decided by the trier of the facts, and while a party may testify to his intention at a given time, if his testimony is at variance with the evidence it is of little value.[5]

■ In the light most favorable to the defendant, his testimony was that plaintiff's car was traveling west entirely upon the right or north traffic lane at a speed of 15 to 25 miles per hour; that plaintiff's speed was "decreased somewhat" as the vehicle neared the intersection, and that when plaintiff's automobile was 10 to 30 feet east of the intersection it was so operated that it moved left and partially into the left or south lane so as to completely straddle the center line of the highway. Accepting as true this testimony as to the speed and movements of plaintiff's automobile as it approached the intersection, we are of the opinion it was permissible for the jury to infer and deduce from such evidence that plaintiff did, in fact, undertake and intend to turn left at the intersection, and that it was proper for the trial court to submit by instruction, as a ground for finding plaintiff contributorily negligent, plaintiff's failure to signal his intention to turn. Defendant testified that when the *impact occurred the left rear wheel* of plaintiff's car was then south of the center line and its right front wheel was north of the center line. Plaintiff says that acceptance of this testimony destroys any inference that plaintiff intended to turn left at the intersection because, when the collision occurred, plaintiff's automobile

Mo., 417 S.W.2d 942, 945(3); Wolfe v. Harms, Mo., 413 S.W.2d 204, 213(17); Wiesemann v. Pavlat, Mo.App., 413 S.W. 2d 23, 28(9).

4. Highfill v. Brown, Mo. (banc), 340 S.W. 2d 656, .661(6, 7); La Fata v. Busalaki, Mo., 291 S.W.2d 151, 152(1); Martin v. Effrein, 359 Mo. 1150, 1153, 225 S.W.2d 775, 778(2).

5. Bohm v. Fidelity and Casualty Company of New York, Mo.App., 399 S.W.2d 450, 453(5); Julian v. Kiefer, Mo.App., 382 S.W.2d 723, 729(7); Edie v. Coleman, 235 Mo.App. 1289, 1301–1302, 141 S.W.2d 238, 245–246(11–13), certiorari quashed, State ex rel. Edie v. Shain, 348 Mo. 119, 152 S.W.2d 174.

was headed away from the graveled roadway rather than toward it. This ignores defendant's testimony that after plaintiff's car moved into the left lane defendant sounded the horn on his automobile, and plaintiff's testimony that he observed defendant's car behind him in the rear view mirror prior to impact. The fact plaintiff's car was turned away from the graveled roadway *at the moment of impact* is not incompatible with the inference that plaintiff had previously intended and undertook to turn left but abruptly changed the direction of *his* travel upon hearing the warning sounded by defendant or upon seeing defendant in his rear view mirror in the process of passing.

▉ The opening paragraph of § 304.-019, in part, reads: "No person shall * * * turn a vehicle from a direct course or move right or left upon a roadway unless and until such movement can be made with reasonable safety and then only after the giving of an appropriate signal in the manner provided herein." Because of subparagraph (3) of § 304.-019, quoted here marginally,[6] plaintiff argues the signal is only required if a motorist is turning into an intersecting highway. We do not believe the statute is to be so narrowly interpreted, othwise why would it also specify application to turning from a direct course or moving left or right? The requirement for an appropriate signal has been applied in numerous cases which involved left turns and movements upon roadways where no intersecting highway was involved. E. g., McDaniels v. Hall, Mo.App., 426 S.W.2d 751, where the plaintiff, being followed by the overtaking and passing defendant, turned partially into the left lane without signalling to avoid a car parked on the right side of the highway; Lands v. Boyster, su-

pra, 417 S.W.2d 942, wherein the left turn involved was being made to reach the left shoulder of the highway where plaintiff intended to stop so he could seine minnows from an adjoining creek; and Reed v. Shelly, Mo.App., 378 S.W.2d 291, which was concerned with a left turn into a private driveway.

In McDaniels v. Hall, supra, 426 S.W.2d at 758–759(8, 9), it is stated that the first paragraph of § 304.019 imposes two duties upon a motorist who intends to move or turn left upon a highway, i. e., (1) he must first ascertain if the movement can be made with safety and (2) he then must give the appropriate signal of his intention to change direction. "Inasmuch as two separate and distinct duties are prescribed by Section 304.019, it is our view that a negligent failure to observe either thereof, or both, may be asserted as a ground for recovery by a plaintiff, or as a ground of contributory negligence by a defendant."

▉ There is no evidence or even a suggestion in the case at bar that plaintiff's automobile got into the left traffic lane as the result of skidding. Therefore, whether it was turned or moved left upon the highway for the purpose of turning at the intersection or for some other reason, plaintiff had a statutory duty to signal his intention to change direction. When the evidence revealed plaintiff had given no signal that he was turning from a direct course, the court, upon the request of the defendant, properly submitted that omission as a ground for finding plaintiff guilty of contributory negligence.

▉ The final point made by the plaintiff on appeal is that the trial court erred in *refusing to permit him to read to the* jury as an admission against interest the

6. "(3) An operator or driver intending to turn his vehicle to the left shall extend his arm in a horizontal position so that the same may be seen in the rear of his vehicle, and shall slow down and approach the intersecting highway so that the left side of his vehicle shall be as near as practicable to the center line of the highway along which he is proceeding before turning."

following question and answer recorded in the deposition of the defendant:

"Q What happened to the Thomas [plaintiff's] Ford after the collision?

"A Well, it went down the highway continuing in a westerly direction down the highway for—well, again, roughly, I would have to say probably seventy-five or a hundred yards to a road that turns off to the right and at that intersection he pulled off of the highway."

At the trial the defendant, testifying as an adverse witness for plaintiff, was asked, "Now, how far did the Thomas vehicle travel after the collision occurred?" and answered, "Approximately 75 to a hundred yards west on Highway 84." This prompted plaintiff's counsel to state, "And that is exactly your estimate of the distance that was given in your deposition * * *." When plaintiff proposed to read the above quoted portion of defendant's deposition, the defendant's lawyer noted, "that's exactly the same answer he [the defendant] gave" at trial, and plaintiff's counsel acknowledged, "that's correct."

"The only basis for the reception of an admission against interest, of course, is its inconsistency with the position taken at the trial by the party against whom it is offered. Albertson v. Wabash R. Co., 363 Mo. 696, 253 S.W.2d 184, 189–190; Wigmore, Evidence, Third Edition, Vol. IV, Sec. 1048, pp. 3–5." Howell v. Dowell, Mo.App., 419 S.W.2d 257, 260(4). As defendant's trial position and deposition answer were "exactly the same," the deposition answer could not constitute an admission against interest and the trial court properly ruled in not permitting plaintiff to read that portion of defendant's deposition to the jury.

The judgment is affirmed.

HOGAN, P. J., and STONE, J., concur.