STATE of Missouri, Appellant,

v.

Tyron E. JOHNSON, Respondent.

No. WD 63756.

Missouri Court of Appeals,
Western District.

Nov. 16, 2004.

Randall M. England, Jefferson City, MO, Arguing on behalf of Appellant.

Shane Lee Farrow, Jefferson City, MO, Arguing on behalf of Respondent.

Before JAMES M. SMART, JR., P.J., JOSEPH M. ELLIS, and LISA WHITE HARDWICK, JJ.

JAMES M. SMART, JR., Judge.

The State of Missouri appeals the trial court's judgment and order suppressing evidence obtained after a traffic stop. The judgment is affirmed.

### Statement of Facts

On the evening of July 20, 2003, at approximately 9:30 p.m., a Jefferson City

police officer and his partner were traveling northbound in the 200 block of Cherry Street when the officer observed a red Oldsmobile traveling southbound. The Oldsmobile pulled over to the curb and parked. A passenger exited the vehicle and walked across the street. The officer recognized the passenger as a convicted felon.

The officer then observed the Oldsmobile pull away from the curb and proceed southbound on Cherry Street. Based on the driver's failure to signal when he pulled away from the curb, the officer activated his lights and stopped the Oldsmobile. Cherry Street at that part of the city is a residential street wide enough to accommodate parallel parking on both sides. It does not have marked lanes or marked parking spaces. There was no other traffic in the area at the time Johnson pulled away from the curb.

Johnson, who was driving the Oldsmobile, identified himself to the officers and advised them that he was on parole "for distribution." [1] The officers confirmed that he was on parole and found that he did not have any outstanding warrants. Without discussing the asserted traffic violation, one of the officers asked Johnson to exit the vehicle and asked for consent to search the vehicle. Johnson gave consent to search the car, which belonged to his brother. The officer found a piece of plastic containing a substance he believed to be cocaine. As a result, Johnson was charged with possession of a controlled substance, a class C felony.

Johnson moved to suppress the evidence recovered from the vehicle. He contended, *inter alia,* that the traffic stop was executed without reasonable suspicion that the defendant had committed any crime and

was, therefore, illegal. At the suppression hearing, the officer who conducted the stop presented the only testimony. He stated that he observed Johnson fail to signal before Johnson pulled away from the curb. He stated that he had no reason to suspect that Johnson was not driving safely. Johnson did not endanger any other vehicles when he pulled away from the curb. The officer testified that had he not uncovered the drugs, he intended to give Johnson only a warning. Although the officer testified that he had often given warnings and sometimes given tickets for failure to signal a lane change, the officer was unclear about how many times he had stopped a driver for pulling away from a curb without signaling.

Because there was no indication that Johnson drove in an unsafe manner, the only issue was whether Johnson committed a technical violation. The motion court believed that the legality of the stop turned on whether Johnson, who was parked on a residential street with parking on both sides and no lane or centerline markers on the roadway, could be stopped for pulling away from the curb without signaling when there was no traffic affected by his movement. After considering the language of section 304.019.1, RSMo 2000, upon which the state relied, the court answered that question in the negative. Accordingly, the court ordered that the evidence be suppressed.

The State appeals.

## The Legality of the Traffic Stop

The State argues that the motion court erred in suppressing the evidence based upon the illegality of the traffic stop.

---

1. Johnson, as a parolee, was prohibited from associating with other convicted felons, such as the passenger who exited his vehicle. The State makes no effort to rely upon the parole violation as a basis for the stop.

The applicable standard of review requires this court to defer to the trial court's factual findings and credibility determinations but to examine questions of law *de novo.* *State v. Rousan,* 961 S.W.2d 831, 845 (Mo. banc 1998). On a motion to suppress, where review involves only a question of law, review is *de novo.* *State v. Werner,* 9 S.W.3d 590, 595 (Mo. banc 2000).

■ The parties agree that this appeal involves resolution of a question of law, i.e., whether the traffic stop for failure to signal when pulling away from the curb was a "legal detention." "As a general matter, the decision to stop an automobile is reasonable where the police have probable cause to believe that a traffic violation has occurred." *State v. Mendoza,* 75 S.W.3d 842, 845 (Mo.App.2002) (*quoting Whren v. United States,* 517 U.S. 806, 809, 116 S.Ct. 1769, 135 L.Ed.2d 89 (1996)). Where a driver's actions are not proscribed by law and would not justify the issuance of a warning, however, there is no probable cause or reasonable suspicion to stop the vehicle. *See id.* at 846.

### Statutory Construction

■ The State does not argue that there was any traffic in the area or any reason to signal from a safety standpoint. Rather, the State bases its argument of a legal stop strictly on the text of section 304.019.1. That statute provides in pertinent part:

> No person shall stop or suddenly decrease the speed of or turn a vehicle from a direct course or move right or left upon a roadway unless and until such movement can be made with reasonable safety and then *only after the giving of an appropriate signal* in the manner provided herein. (Emphasis added.)

■ In construing a statute, we apply the plain meaning of the words used in the statute, understood in the context that they appear, unless there is clear warrant to depart from the plain meaning of the words employed. *See Lewis v. Gibbons,* 80 S.W.3d 461, 465 (Mo. banc 2002); *Wolff Shoe Co. v. Dir. of Rev.,* 762 S.W.2d 29, 31 (Mo. banc 1988); *Robbins v. Dir. of Rev.,* 893 S.W.2d 894, 897 (Mo.App.1995).

Here, we have a statute designed to require hand and mechanical signals in connection with stopping a vehicle, turning a vehicle, or suddenly decreasing its speed. The statute also clearly is intended to require signals in connection with lane changes upon a roadway. The statute provides that these movements should only be made if it is reasonably safe to do so and then only after "the giving of an appropriate signal." The statute does not define the terms employed therein, and the parties do not refer us to any other statute defining these terms.

Nor does the statute ever use the phrase "lane changes" or similar wording. Instead, it uses the phrase "move right or left upon a roadway." The question, then, is whether the statute was intended to require a signal, even if there is no affected traffic, when a driver pulls a parked car away from the curb and proceeds down the street.

The Missouri statute appears to be patterned generally after the laws of certain states. *See, e.g.,* Alabama: ALA.CODE § 32–5A–133; California: CAL. VEH.CODE § 22107; Kansas: KAN. STAT. ANN. § 8–1548; Kentucky: KY.REV.STAT. ANN. § 189.380; Montana: MONT.CODE ANN. § 61–8–336; Nebraska: NEB.REV.STAT. § 60–6, 161; North Dakota: N.D. CENT. CODE § 39–10–38; South Carolina: S.C.CODE ANN. § 56–5–2150; Utah: UTAH CODE ANN. § 41–6–69; Washington: WASH. REV.CODE ANN. § 46.61.305; Wyoming:

Wyo. Stat. Ann. § 31–5–217. These jurisdictions, and Missouri as well, do not explicitly require such a signal when starting from a parked position.[2]

The major thrust of the driver's duty, in most states, is to keep a proper lookout, yield the right of way, and proceed only when it can be done safely. *See* 7A Am. Jur.2d *Automobiles & Highway Traffic* § 334 (1997). It is obvious that safe driving also requires that a signal be given to any traffic that may be affected. *Id.* "A motorist moving a motor vehicle from a parked or standing position also has the duty, which is usually imposed by statute or ordinance, to give *pedestrians or other motorists who may be affected by his or her movement* a signal or warning of his or her intention." *Id.* (emphasis added).

The trial court concluded that if the General Assembly had intended to *always* require a turn signal before leaving a parallel parking space, it could have easily and clearly said so, as other states have done in their statutes. The court determined, based on the above statutes and the cases provided by the parties,[3] that Johnson's action of "proceeding from his parallel parking space under the circumstances described at the hearing" was not illegal.

Thus, the court concluded that the traffic stop was not authorized, and the evidence obtained subsequent to the stop was ordered suppressed.[4]

The State disagrees with the trial court's ruling, considering it to be a suggestion that every circumstance requiring a signal must be spelled out in the statute.[5] Citing *Thomas v. Fitch,* 435 S.W.2d 703, 710 (Mo.App.1968), and *McDaniels v. Hall,* 426 S.W.2d 751, 758 (Mo.App.1968), the State contends that Missouri courts have interpreted section 304.019.1 as "applying to *any* left or right movement on a roadway."

In *Thomas,* however, the driver had crossed the centerline without signaling, which contributed to the collision. 435 S.W.2d at 709. The court rejected the argument that the signal statute only applies to a turn at an intersecting highway:

> We do not believe the statute is to be so narrowly interpreted, otherwise why would it also specify application to turning from a direct course or moving left or right? The requirement for an appropriate signal has been applied in numerous cases which involved left turns and movements upon roadways where no intersecting highway was involved.

---

2. Some states do explicitly require a signal while starting from a parked position, regardless of the absence of other traffic. *See, e.g.,* Colorado: Colo.Rev.Stat. § 42–4–903(4) (1997); Delaware: Del.Code Ann. tit. 21, § 4155; Georgia: Ga.Code Ann., § 40–6–123; Hawaii: Haw.Rev.Stat. § 291C–84; Illinois: 625 Ill. Comp. Stat. 5/11–804; Louisiana: La. Rev.Stat. Ann. § 32:104; New Hampshire: N.H.Rev.Stat. § 265:45; New York: N.Y. Veh. & Traf. Law § 1163; Texas: Tex. Transp. Code Ann. § 545.104(a) (1999); Vermont: Vt. Stat. Ann. tit. 23 § 1064.

3. The court did not identify those cases.

4. The arresting officer testified that Johnson's actions also violated a Jefferson City ordinance (identified as Section 19–111, Rev. 9/30/2003 by the motion court), but that violation is not examined in the motion court's suppression order. Nor does the State, here on appeal, advance that theory to support the traffic stop.

5. The State cites *Curry v. Goldberg,* 614 S.W.2d 318, 320 (Mo.App.1981) (right hand turn without signaling is a violation of section 304.019); *King v. State,* 839 S.W.2d 709, 713 (Mo.App.1992) (moving from left-hand lane to right-hand lane of an interstate highway requires use of a signal); *Renfro v. Dir. of Rev.,* 927 S.W.2d 945, 947 (Mo.App.1996) (traffic stop was legal after officer observed lane change without signaling). There is no dispute that the signal statute applies under these circumstances.

*Id.* at 710. The State relies on this language to supports its interpretation of section 304.019. While the *language* does seem to do so, it must be remembered that in *Thomas*, the court was talking about the fact that the driver crossed the centerline without signaling his intention to do so. Here, Johnson merely moved left away from the curb in the same lane of traffic and did not cross any real or imaginary centerline on the roadway.

The State cites *McDaniels* for the proposition that the statute applies where a driver, to avoid a car parked on the right side of the highway, turns partially into the left lane without signaling. *McDaniels* is inapposite because the issue there was whether the driver had attempted to make a sudden movement to the left (in order to avoid the parked vehicle) without first ensuring that "such movement c[ould] be made with reasonable safety," as is required by section 304.019.1. 426 S.W.2d at 753–54. The driver in *McDaniels* was not accused of failing to signal. He testified that he *did* signal, and his testimony was not disputed. *Id.* at 754. The court found that the driver made a sudden turn to the left, crossed the centerline, and caused an accident, without first determining that he could do so with reasonable safety. *Id.* at 756–57. As in *Thomas*, the vehicle crossed the centerline, moving from one lane into another.

According to the State, the plain language of the signal statute clearly requires a turn signal anytime a vehicle moves "right or left" upon the roadway. There is no legal or logical justification, they say, for not applying the statute to every left or right movement, including the act of pull-

ing away from a curb. However, under the State's literal interpretation, a signal would be necessary, regardless of the presence or absence of other traffic, every time a car (1) moves to the right or left to avoid a pothole or any object in the roadway; (2) pulls from a parking lot onto a street or roadway (even a one-way street); or (3) backs into a street from a perpendicular parking space.

We also note that the Missouri Department of Revenue, in the 2004 Missouri Driver Guide (Dec.2003 Rev.), has an interpretation different from that of the Attorney General. The Director of Revenue describes the duty to signal only as follows:

> Before you *stop, turn or change lanes*, let the other drivers know what you are going to do by signaling. You can signal with your hand and arm or with your vehicle's turn signals and brake lights. You should signal at least 100 feet before you turn so the other drivers can be ready. Check your vehicle's turn signals often to ensure they are working properly. (Emphasis added.) [6]

The Director of Revenue, here, in discussing the duty to signal, clearly interprets the "move right or left" statutory language as equivalent to a lane change. The Director makes no mention of signaling in connection with starting a vehicle and pulling away from the curb. The Director apparently sees the duty to signal as applicable only to acts relating to vehicles that are already moving—stopping, turning, and changing lanes.

Johnson, taking an approach similar to that of the Missouri Driver's Guide, sug-

---

**6.** 2004 Missouri Driver Guide, page 47. The Missouri Driver Guide is also available at *http://www.dor.mo.gov/mvdl/drivers/dlguide*. In the portion concerning the driving examination, the Driver Guide shows that a driving examiner will require an examinee, before

pulling out of a parking space, to check traffic and to signal. This is in accord with the idea that signaling is always desirable, even when there is no affected traffic. But this is not the portion of the guide that purports to state the law. Driver's guide at page 27.

gests that the purpose and essence of the statute is to require a signal (along with careful vehicle operation) when a motorist turns right or left, changes from one lane to another, or suddenly stops or decreases speed. A signal must be given before pulling away from a parked position when there is traffic that may be affected, but *the statute in question* does not require it. That duty is derived from the general duty to operate a vehicle with the "highest degree of care." *See, e.g.,* § 304.012, RSMo 2000. The statute on which the State relies here, Johnson notes, does not forbid accelerating without a signal or moving forward from a stopped position. Johnson contends that the statute does not require a driver to signal when pulling away from a curb on an unmarked, two-way city street when there is no traffic in the area. Such an action constitutes movement within the same lane of traffic and is not a violation of the law, he says. He argues that under the State's strict interpretation, "officers would be virtually unrestricted in their ability to pull over motorists for failing to signal prior to making any movement to the left or right on the roadway." Thus, officers could stop anyone they desire and ask for permission to search. If they find something, they could always retroactively attribute the stop to an unsignaled movement "right or left" upon the roadway. Johnson further argues that a motorist would not be able to determine from the plain language of section 304.019 that he is required to signal when starting from a stopped position.

No Missouri case on point has been brought to our attention. The cases cited by the State are distinguishable in that they all involve vehicles that are either (1) moving across a real or imaginary centerline from one lane to another while in motion on a roadway or (2) attempting to make a turn onto an intersecting street. Here, however, Johnson did not leave the roadway; he did not change lanes; and he did not cross any real or imaginary centerline. He merely moved from a stopped position on the far right side of the roadway toward the center of the roadway as he continued southbound. He did move from "right to left on a roadway," to be precise, but he moved from a stopped position, and there was no affected traffic. Johnson is correct that the cases cited by the State do not involve a car starting from a parked or stopped position in the far right portion of a lane of traffic and moving out into the center of that same lane.

In interpreting statutes, "our polestar is the intent of the legislature." *Garland v. Dir. of Revenue,* 961 S.W.2d 824, 830 (Mo. banc 1998). Construction must always "seek to find and further that intent." *Id.* Sometimes, when we isolate one phrase from its statutory context, we get a meaning different from that which would appear if we considered the entire statute in context. *See Phillips v. Am. Motorist Ins. Co.,* 996 S.W.2d 584, 587 (Mo.App.1999). As explained in *Ferrell Mobile Homes, Inc. v. Holloway*:

> A statute is passed as a whole and not in part or sections and is animated by one general purpose and intent. Consequently, each part or section should be construed in connection with every other part or section so as to produce a harmonious whole. Thus, it is not proper to confine interpretation to the one section to be construed.

954 S.W.2d 712, 715 (Mo.App.1997) (*quoting* NORMAN J. SINGER, SUTHERLAND STATUTORY CONSTRUCTION § 46.05 (5th ed.1991)).

One thing we notice about the Missouri statute, considering it as a whole, is that the terminology employed seems to contemplate moving vehicles rather than a vehicle starting from a stopped position:

1. No person shall stop or suddenly decrease the speed of or turn a vehicle from a direct course or move right or left upon a roadway....

(1) An operator or driver when stopping ...;

(2) An operator or driver intending to turn the operator's vehicle to the right ... and shall slow down ...;

(3) An operator or driver intending to turn the operator's vehicle to the left ... and shall slow down ...;

\* \* \*

§ 304.019.1. As the trial court noted, there is no reference here to a stopped vehicle or a vehicle moving from a stopped position, while statutes in other jurisdictions contain an explicit statement to that effect. *See, e.g.,* Colorado: COLO.REV.STAT. § 42–4–903(4) (1997); Texas: TEX. TRANSP. CODE ANN. § 545.104(a) (1999). Such language was adopted in these states even though there was already general language about "moving right or left" upon a roadway. *Id.*

The Missouri statute in question says explicitly what an operator must do when intending to "turn the operator's vehicle to the left." Section 304.019.1(3) states that an operator so intending "shall [signal]" and "shall slow down" while approaching the intersecting highway with the left side of the vehicle as near the center line as practicable. This provision obviously applies only to moving vehicles planning a full left turn, rather than to vehicles pulling away from a curb. Therefore, we do not take the phrase "turn the operator's vehicle to the left" in that subsection to be referring to a vehicle pulling left from a curb.

Further, we notice that the statute, although prescribing various hand signals as well as mechanical signals, fails to prescribe a hand or mechanical signal for a driver parked perpendicular to the roadway who must back out of a parking space into a lane of traffic. Is this because the drafters assumed that the "back up lights" would constitute the appropriate signal, even though such lights may not be visible until the driver has already moved at least part way into the portion of the lane upon which traffic flows? Or is the maneuver of backing out of a parking space a sufficiently unique exception that it should be disregarded in construing the statute? Or, going further, is this simply an indication that the General Assembly did not contemplate or plan that every movement "right or left" upon the roadway would always require a signal?

Where statutory language is unclear in context or will lead to an illogical result in light of the overall legislative purpose, we look beyond the plain and ordinary meaning of the words and construe the words in light of the overall purpose. *See Phillips,* 996 S.W.2d at 587–88. In the case of an unclear criminal statute, we construe the statute strictly against the State. *See State v. Withrow,* 8 S.W.3d 75, 79–80 (Mo. banc 1999). Here, we think the overall purpose was to require signals (as well as careful driving) when drivers turn left or right or change lanes upon a roadway.

The language of the statute, in context, also produces a more logical result if it is interpreted as applicable to moving vehicles engaged in a turn or a movement out of one lane into another. For these reasons, and because criminal statutes must be narrowly construed, we conclude that the disputed language in section 304.019.1, *"move right or left upon a roadway,"* in the statutory context, was not intended to

apply to a driver pulling away from a curb and proceeding down the street.[7]

We conclude that the statute does not condemn Johnson's failure to signal. Because Johnson was not guilty of driving unsafely or committing any other infraction and because the State offers no other justification for the stop, the officer was not entitled either to arrest or warn Johnson. Accordingly, we cannot say that the stop and detention were reasonable. We must hold that the officer lacked probable cause or reasonable suspicion to stop the vehicle. *See Mendoza,* 75 S.W.3d at 846. Therefore, the consent to search the vehicle is vitiated as improperly obtained. *Id.* The exclusionary rule requires suppression of the evidence.

## Conclusion

For the foregoing reasons, the court's judgment suppressing the evidence against Johnson is affirmed.

ELLIS and HARDWICK, JJ., concur.

---

7. There remains, of course, the duty to operate a vehicle with the "highest degree of care" (*see, e.g.,* § 304.012, RSMo 2000), which would include the duty to be very careful to merge into traffic only when it can be done with safety and to signal appropriately when there is other traffic in the area that may be affected.