**Andrew J. HACK, Respondent,**

v.

**Trish VINCENT Missouri Director of Revenue, Drivers License Bureau, Appellant.**

**No. WD 68408.**

Missouri Court of Appeals,
Western District.

July 22, 2008.

Abagail L. Pierpoint, Kansas City, MO, for appellant.

Jon M. Krebbs, Liberty, MO, for respondent.

Before JAMES M. SMART, JR., P.J., THOMAS H. NEWTON, and RONALD R. HOLLIGER, JJ.

THOMAS H. NEWTON, Judge.

Mr. Andrew Hack was arrested for driving while intoxicated. The Director of Revenue suspended his license. Mr. Hack filed a petition for a trial *de novo* under

section 302.530 and 302.535.[1] Mr. Robert Bailey, Officer Peter Oulman, and Mr. Phil Broadbent testified at the trial. Mr. Hack did not testify. After the trial, the trial court reinstated Mr. Hack's license finding there was no probable cause to believe Mr. Hack was driving a motor vehicle with a blood-alcohol content (BAC) greater than 0.08%. The Director appealed the decision.

### Factual and Procedural Background

Mr. Hack and Mr. Bailey rode their motorcycles to a bar. Mr. Bailey testified at the trial that they had one or two intoxicating drinks. The two of them decided to move their motorcycles to the back of the bar so that a coworker could pick up the motorcycles. They did not want to jeopardize their commercial driver's licenses by drinking and driving. They left the bar to move their motorcycles around 6:50 p.m.

Mr. Bailey testified that Mr. Hack started the motorcycle and began pushing it. As he adjusted the idle, the motorcycle jumped forward, dragging Mr. Hack behind it. The motorcycle flipped over and crashed into a fence. The fence is part of a nursery owned by Mr. Bill Hoppe. Shortly after the accident, Mr. Hoppe came out and accepted five dollars for the damage. Mr. Bailey testified that Mr. Hoppe said that this amount was more than the damage. They finished moving the motorcycle behind the bar and went back inside. Mr. Bailey testified that they ordered more beer, but Mr. Hack had only a sip of the drink he ordered and had nothing further to drink.

Officer Oulman arrived at the scene, talked to Mr. Hoppe and examined the motorcycle. While examining the motorcycle, Mr. Hack approached him and asked if he could help. Officer Oulman noticed that Mr. Hack had abrasions and mud on the left side of his body and his clothes were torn. He had the strong odor of alcohol on his breath, had difficulty maintaining his balance, slurred his speech, and mumbled while talking. Both Mr. Hoppe and his wife identified Mr. Hack as the man they saw straddling the motorcycle immediately after the accident. Mr. Hack told the officer that he was racing a bicyclist when the accident occurred. Officer Oulman arrested Mr. Hack at approximately 7:14 p.m. Afterwards, Officer Oulman went into the bar and talked to the bartender who told him that she had served Mr. Hack one alcoholic beverage in the hour she had been on duty, and she showed the officer the glass she had served him, which was still approximately half full. Mr. Bailey testified that Mr. Hack had not been racing anybody and was not riding the motorcycle when it crashed. Mr. Broadbent testified that he had been called to bring his truck and trailer to take the motorcycles away.

After Mr. Hack was arrested he was taken to the police station where he subsequently submitted to a BAC test, which yielded a result of 0.16%. The Director suspended his license. The trial court reinstated Mr. Hack's license finding that there was no probable cause to believe that Mr. Hack was driving a motor vehicle with an alcohol concentration in his blood, breath, or urine of eight hundredths of one percent or more by weight. The Director appeals claiming there was probable cause to believe that Mr. Hack was operating or driving a motor vehicle in an intoxicated condition.

### Legal Analysis

We review a trial court's decision in a license revocation case under *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976).

1. All statutory references are to RSMo 2000 and the Cumulative Supplement 2006.

*Furne v. Dir. of Revenue,* 238 S.W.3d 177, 179 (Mo.App. W.D.2007). ' "Accordingly, the trial court's decision will be affirmed unless it is not supported by substantial evidence, it is against the weight of the evidence, or it misstates or misapplies the law." ' *Id.* (quoting *Engelage v. Dir. of Revenue,* 197 S.W.3d 197, 198 (Mo.App. W.D.2006)).

■ The trial court's decision to reverse the decision of the director is against the weight of the evidence and misapplies the law. In a case under section 302.505, the director is required to establish by a preponderance of the evidence that (1) the driver was arrested upon probable cause that the driver committed an alcohol-related driving offense, and (2) the driver had been driving with a BAC that exceeded the *per se* limit of 0.08%. *Blazier v. Vincent,* 204 S.W.3d 658, 661 (Mo.App. W.D.2006).

■ ' "Probable cause to arrest exists when the arresting officer's knowledge of the particular facts and circumstances is sufficient to warrant a prudent person's belief that a suspect has committed an offense." ' *Hinnah v. Dir. of Revenue,* 77 S.W.3d 616, 621 (Mo. banc 2002)(quoting *State v. Tokar* 918 S.W.2d 753, 767 (Mo. banc 1996)). Whether probable cause existed is determined based upon the knowledge the police officer had prior to the arrest. *Id.* Where the facts in the case are contested, the appellate court must defer to the trial court's determination of those facts. *Furne,* 238 S.W.3d at 180. In this case however, there are no material facts at issue. There are two possible scenarios for what happened prior to the accident. If Mr. Hack was pushing the motorcycle there is a legal question whether that qualifies as "operating" within the statute. But clearly there was no genuine issue of material fact if Mr. Hack was racing a bicycle, in which case there is no question that he was operating or driving the motorcycle. Thus, we are left to determine whether pushing a running motorcycle qualifies as operating it.

■ The Director argues Mr. Hack was 'operating' and 'driving' the motorcycle and, thus, met the second element of the statute. These terms have been held to be defined according to their ordinary meaning as defined in the dictionary. *Cox v. Dir. of Revenue,* 98 S.W.3d 548, 550 (Mo. banc 2003). Operate is defined as "to cause to function usually by direct personal effort." *Id.* Drive is defined as "to guide a vehicle along or through." *Id.* The bright line test is that the motor is running. *Id.* Once the key is in the ignition and the motor is running, an officer has probable cause to believe that the person sitting behind the wheel is operating the vehicle. In this case, Mr. Hack had turned the key and the motor was running. He was pushing the motorcycle and the motor was engaged to assist him in pushing it. Thus, he was operating the motorcycle. The decision by the trial court that he was not driving or operating the motorcycle is a misapplication of the law, because it is clear based on the undisputed facts that the motor was running and he was physically causing the motorcycle to move. This is true whether he was racing a bicyclist or pushing the motorcycle.

■ Probable cause also existed that Mr. Hack was in an intoxicated state at the time of his arrest. Officer Oulman observed Mr. Hack within twenty five minutes of the accident. He noted that Mr. Hack smelled of alcohol, had difficulty maintaining his balance, and slurred his speech. Proof of intoxication does not require a chemical test. *State v. Ruark,* 720 S.W.2d 453, 454 (Mo.App. S.D.1986). A police officer has probable cause of intoxication when he observes an alleged offender with slurred speech, difficulty maintain-

ing balance, and an impairment of motor reflexes. *See id.* Officer Oulman's observations of Mr. Hack included each of these factors along with the strong smell of alcohol. Thus there was probable cause that Mr. Hack operated the motorcycle in an intoxicated state. The decision by the trial court was against the weight of the evidence.

█ The final issue is whether Mr. Hack's BAC exceeded 0.08% when he was operating the motorcycle. Mr. Hack's BAC was measured at 0.16% sometime after his arrest. Mr. Hack told the officer that he did not drink any alcohol between the time of the accident and the time of his arrest. Mr. Bailey testified that Mr. Hack only had a sip from one beer. Officer Oulman talked to the bartender who had come on duty approximately half an hour prior to the accident. She had served Mr. Hack one beer since she came on duty. She showed the officer the glass she had served Mr. Hack; it was half full. Given Mr. Hack's impaired state at the time of arrest, the strong smell of alcohol, and the fact that he drank at most a half glass of beer immediately prior to the accident and almost nothing afterwards, and the extraordinarily high BAC level, the evidence shows that his BAC was at least 0.08% when he was operating the motorcycle. Any finding to the contrary is against the weight of the evidence. The State's point is granted.

We reverse and remand to the trial court to issue judgment in accordance with this opinion.

JAMES M. SMART, JR., P.J., and RONALD R. HOLLIGER, J. concur.