STATE of Missouri, Respondent,

v.

**Kalvin M. LOYD, Appellant.**

**No. WD 71692.**

Missouri Court of Appeals, Western District.

Dec. 21, 2010.

**910**

Meghan A. Litecky, Kansas City, MO, for respondent.

Frederick J. Ernst, Kansas City, MO, for appellant.

Before Division Four: LISA WHITE HARDWICK, Chief Judge, Presiding, ALOK AHUJA, Judge and GARY D. WITT, Judge.

GARY D. WITT, Judge.

After a jury trial, Kalvin Loyd was convicted of driving while intoxicated, Section 577.010 [1] and driving while revoked, Section 302.321. Loyd was sentenced by the trial court to six months incarceration on both counts, with the execution of each sentence suspended, and Loyd was placed on two years of probation. For the reasons stated below, we reverse and remand Loyd's conviction and sentence.

## Factual Background

Loyd was charged in the Circuit Court of Jackson County with the class B misdemeanor of driving while intoxicated, Section 577.010 and the class A misdemeanor of driving while revoked, Section 302.321 for events that occurred on August 25, 2008.

Beginning on August 18, 2009, the case was tried before a jury. At trial, the State presented evidence that on August 25, 2008, after leaving the Isle of Capri casino in Kansas City, Missouri, with his wife at approximately 2:00 a.m., Loyd drove his vehicle while intoxicated and while his license was revoked. After the jury returned a guilty verdict on both counts, the trial court sentenced Loyd to six months incarceration on both counts, with the execution of each sentence suspended, and Loyd was placed on two years of probation. Loyd now appeals.

Further facts pertaining to the circumstances of Loyd's arrest and conviction will be outlined as relevant in the analysis section.

## Analysis

In Point One, Loyd argues that the trial court erred in overruling his motion to suppress evidence because the officer did not have reasonable suspicion or probable cause to stop Mr. Loyd's car.[2]

---

1. All statutory citations are to RSMo 2000 as updated through the 2009 Cumulative Supplement, unless otherwise indicated.

2. It should be noted that the record in this case shows that the trial court never ruled on Loyd's Motion to Suppress. A hearing was held on the motion on the morning of the trial. At the conclusion of that hearing, the trial judge indicated that "the probable cause here is a little doubtful" and requested the dash cam video for further review prior to ruling and took the matter under advisement. When court went back in session, there were various other motions addressed, and then the jury was brought in without the trial court ever announcing a ruling on the Motion to Suppress.

■ Loyd does not dispute that his claim on appeal can be reviewed by this Court only for plain error, which he requests under Rule 30.20.[3] While Loyd argued his motion to suppress immediately prior to the beginning of trial, it is not disputed that he failed to preserve his claim in this regard *at trial* through an appropriate objection. "Absent an objection at trial to the admission of the evidence challenged in the motion, the issue is not preserved for appellate review." *State v. Williams*, 9 S.W.3d 3, 11 (Mo.App. W.D. 1999) ("Here, although the appellant filed a pretrial motion to suppress the crack cocaine seized, as well as the rest of the State's evidence relating to the alleged illegal search of his apartment, the record reflects that he failed to object at trial to the admission of this evidence."); *see also State v. Edwards*, 280 S.W.3d 184, 188 (Mo.App. E.D.2009) ("Because a ruling on a motion to suppress is interlocutory, and thus subject to change during the trial, a specific objection must be made when the evidence is offered at trial in order to preserve the issue for appellate review.").

■ Rule 30.20 authorizes us to review, in our discretion, "plain errors affecting substantial rights ... when the court finds that manifest injustice or miscarriage of justice has resulted there from." "Errors are plain if they are evident, obvious, and clear." *State v. Rios*, 314 S.W.3d 414, 422 (Mo.App. W.D.2010).[4]

■ "At a motion to suppress hearing, the State bears the burden of proving that the seizure was constitutionally proper." *State v. Pike*, 162 S.W.3d 464, 472 (Mo. banc 2005). "When reviewing the trial court's overruling of a motion to suppress, this Court considers the evidence presented at both the suppression hearing and at trial to determine whether sufficient evidence exists in the record to support the trial court's ruling." *Id.* "This Court defers to the trial court's factual findings and credibility determinations, and considers all evidence and reasonable inferences in the light most favorable to the trial court's ruling." *State v. Sund*, 215 S.W.3d 719, 723 (Mo. banc 2007) (citations omitted).

■ The Fourth Amendment to the United States Constitution guarantees that individuals will not be subject to unreasonable searches or seizures. U.S. Const. amend. IV. "A routine traffic stop based on the violation of state traffic laws is a justifiable seizure under the Fourth Amendment." *State v. Granado*, 148 S.W.3d 309, 311 (Mo. banc 2004). "So long as the police are doing no more than they are legally permitted and objectively authorized to do, the resulting stop or arrest is constitutional." *Id.* "As a general matter, the decision to stop an automobile is reasonable where the police have probable cause to believe that a traffic violation has occurred." *State v. Johnson*, 148 S.W.3d 338, 340 (Mo.App. W.D.2004) (internal quotation marks omitted). "Where a driver's actions are not proscribed by law and would not justify the issuance of a warning, however, there is no probable cause or reasonable suspicion to stop the vehicle." *Id.* Whether probable cause existed is based upon the knowledge the police offi-

---

3. All rule references are to the Missouri Supreme Court Rules (2010), unless otherwise indicated.

4. "We ordinarily review the denial of a motion to suppress to determine if there was substantial evidence to support the decision and will only reverse if the trial court's ruling is clearly erroneous." *State v. Nylon*, 311 S.W.3d 869, 884 (Mo.App. E.D.2010). "Clear error review of the denial of a motion to suppress, however, requires that the moving party properly preserved the trial court error." *Id.*

cer had prior to the search or seizure. *Hack v. Vincent,* 257 S.W.3d 667, 670 (Mo. App. W.D.2008).

██ Here, Loyd argues that the officer in question that initiated the traffic stop did not have probable cause to believe that Loyd had violated a statute or traffic ordinance, and thus any seizure by the police was inherently unreasonable. We agree.

It is not disputed on appeal that after the police pulled Loyd over, the officer testified that it was readily apparent that Loyd was driving while intoxicated. Accordingly, the propriety of Loyd's detention, which led to his subsequent arrest, turns on whether the police had probable cause to pull over his vehicle in the first instance.

At the suppression hearing, the State argued that Loyd had committed three different traffic violations, each of which gave the officer in question probable cause to stop Loyd's vehicle. Accordingly, we analyze these three different traffic violations in turn because the police needed only to have probable cause to believe that Loyd committed one traffic violation in order to have authority to pull Loyd's vehicle over. In this case the trial court had the benefit of a dash cam video from the officer's car of the entirety of the activities on the night in question.

### A. Failure To Signal

At the suppression hearing, the State argued that the officer's stop of Loyd's vehicle was lawful in light of the fact that the police had probable cause to believe that Mr. Loyd had violated a traffic ordinance by failing to signal prior to turning.

It is not disputed on appeal that Loyd's alleged failure to signal occurred while Loyd's vehicle was leaving the Isle of Capri Casino's private parking lot, which took place prior to the vehicle turning on to a public thoroughfare. Specifically, Loyd took a right turn onto Front Street, which is located in Kansas City, Missouri. The first time the officer had an opportunity to observe Loyd's automobile, it was stopped at the stoplight exiting the casino.

The dash cam video in this case begins during the officer's previous car stop and runs through the entire interaction between Loyd and the officer. As Loyd left the Isle of Capri Casino, he turned to the right from the Casino parking lot onto Front Street, ending up traveling in the same direction as the officer, in front of the officer. The officer admitted that, based on a slight curve in the road he was on and the angle from which he approached the intersection, he was not in a position to see either the front or rear right hand turn signals of Loyd's car either before or during the car's turn. This fact is clearly evidenced by the dash cam video. The officer based his belief that Loyd had not used his turn signal solely on the fact that he believed that the turn signal would not have automatically turned itself off by the time he could see the rear right turn signal light. This belief is based solely on the assumption that Loyd was using a turn signal with an automatic shutoff that the automatic shutoff would not have engaged by the time Loyd finished the turn so the officer could see the rear turn signal, and that Loyd did not override the automatic shutoff and turn the signal off at some point during the turn. The officer did not observe any of Loyd's activities or driving in the parking lot.

The State did not charge Loyd with the crime of failure to signal, and the dash cam video is clear that there was no evidence to support such a charge.[5] Therefore, State's

---

5. Based on our conclusion, discussed infra, that the failure to signal at this location did

argument that this constitutes probable cause for the stop must fail.

The question presented is, even if there was evidence to support that Loyd failed to signal at this intersection, was his failure to signal a violation of the law in light of the fact that the failure to signal occurred on private property. Both the State of Missouri and the City of Kansas City require motorists to signal prior to turning their vehicles under certain circumstances. Section 304.019 is entitled "Hand and mechanical signals, violations, penalty" and states the following in relevant part:

No person shall stop or suddenly decrease the speed of or turn a vehicle from a direct course or move right or left upon a *roadway* unless and until such movement can be made with reasonable safety and then only after the giving of an appropriate signal in the manner provided herein.

. . . .

(2) An operator or driver intending to turn the operator's vehicle to the right shall extend such operator's arm at an angle above horizontal so that the same may be seen in front of and in the rear

of the vehicle, and shall slow down and approach the intersecting highway as near as practicable to the right side of the highway along which such operator is proceeding before turning[.]

*Id.* (emphasis added).[6]

"The primary objective of statutory interpretation is to ascertain the intent of the legislature and give effect to that intent as it is reflected in the plain language of the statute." *State v. Simmons,* 270 S.W.3d 523, 531 (Mo.App. W.D.2008). "When the language of the statute is unambiguous, a court must give effect to the language as written." *Id.*

Here, it is unambiguous that Section 304.019 applies only to motorists on a "roadway," which is defined as "that portion of a *state highway* ordinarily used for vehicular travel, exclusive of the berm or shoulder." Section 304.001(12) (emphasis added). Of course, because Loyd was on private property prior to turning, there can be no doubt that he was not located on a "state highway."[7] For this reason, we conclude that the officer did not have probable cause to believe that Loyd violated Section 304.019.[8]

not constitute a crime, we don't need to decide the sufficiency of the evidence to support a finding on this issue.

**6.** Section 1 of this section proscribes the occasions upon which a driver must signal. Subsections (1), (2) and (3) proscribe the way in which a signal must be given for each action and subsection (4) proscribes that the required signal may be given by a signal light or device in lieu of an arm signal.

**7.** Section 304.001.13 defines "State highway" to be "a highway constructed or maintained by the state highways and transportation commission with the aid of state funds or United States government funds, or any highway included by authority of law in the state highway system, including all right-of-way."

**8.** We acknowledge that the Southern District analyzed a similar issue and reached a differ-

ent result in *State v. Moore,* 271 S.W.3d 641 (Mo.App. S.D.2008). In *Moore,* motorist was stopped for failing to signal prior to turning and was subsequently arrested for driving while intoxicated. *Id.* at 642. Notwithstanding the fact that both the road he was traveling on prior, and after turning was not a "roadway," the Southern District nonetheless concluded that the officer had probable cause to pull over the defendant in light of the fact that "intersecting highway" fell within the broad confines of the definition of "highway" pursuant to Section 304.025. *Id.* at 643. Section 304.025 defines "highway" to be "any public road or thoroughfare for vehicles, including state roads, county roads and public streets, avenues, boulevards, parkways or alleys in any municipality." The Southern District held that the language of subsection (3) of 304.019 which sets forth how the signal is

In its municipal code, the City of Kansas City also requires motorists to signal prior to turning under specific circumstances. Section 70–454 is entitled "Turning movements; required signals" and provides in relevant part the following:

(a) No person shall turn a vehicle at an *intersection* unless the vehicle is in proper position upon the *roadway* as required in section 70–451, or turn a vehicle to enter a private road or driveway, or otherwise turn a vehicle from a direct course or move right or left upon a *roadway,* unless and until such movement can be made with reasonable safety. No person shall so turn any vehicle without giving an appropriate signal in the manner provided in this division.

(b) A signal of intention to turn right or left, when required, shall be given continuously during not less than the last 100 feet traveled by the vehicle *before turning.*

*Id.* (emphasis added).

As defined by the municipal code, it cannot be disputed that Loyd was not at an "intersection" or "roadway" prior to turning since he was on private property that was not "publically maintained," and

therefore he was not required to signal prior to turning.[9] Accordingly, the police could not have had probable cause to believe that Loyd was in violation of Section 70–454.[10]

For all of these reasons, Loyd's failure to signal, if he did not do so, while in the Isle of Capri's parking lot did not provide the police probable cause to pull over Loyd's vehicle.

## B. Failure To Turn In The Nearest Lane

■ The State also argued at the suppression hearing that the officer's stop of Loyd was lawful in light of the fact that Loyd did not turn into the nearest lane. We need not be detained by this issue because the State concedes on appeal, as it must, that the officer testified at the hearing that he was unaware of this alleged traffic violation until after he reviewed the dash cam video of the incident, which the officer did not review until *after* he had detained and arrested Loyd.

■ " 'Probable cause to arrest exists when the arresting officer's knowledge of the particular facts and circumstances is sufficient to warrant a prudent person's

to be given, serves to expand the duty requirements of 304.019.1 which sets forth the duty to signal. We find this to be a strained reading of the statute.

Here, the "intersecting highway" that Loyd turned on (Front Street) falls within the broad confines of the definition of "highway" under Section 304.025. We conclude, however, that because Loyd was not on a "roadway" prior to turning, the fact that he turned upon a "highway" is of no importance under the clear language of the statute. In reaching this conclusion, we note that this Court has previously held that Section 304.091 is a "criminal statute" that must be "narrowly construed." *See State v. Johnson,* 148 S.W.3d 338, 344–45 (Mo.App. W.D.2004) (holding that Section 304.019 does not "apply to a driver pulling away from a curb and proceeding down the street"). We elect to follow the

analysis of *Johnson* as opposed to that in *Moore.*

9. Section 70–1 defines the applicable terms of "intersection," "roadway," "street," and "highway." Without outlining the full language that defines each and every one of these terms, it is sufficient to say that to fall within any one of these definitions the area in question must be "publically maintained." We also note that section 70–454 itself distinguishes a "roadway" from a "private road or driveway."

10. In addition the ordinance requires the person to signal "before turning" not during or after the turn. As was previously noted, the officer admitted that he had no way of knowing whether or not Loyd signaled before he turned.

belief that a suspect has committed an offense.'" *State v. Clayton*, 995 S.W.2d 468, 477 (Mo. banc 1999) (quoting *State v. Tokar*, 918 S.W.2d 753, 757 (Mo. banc 1996)). "Whether there is probable cause to arrest depends on the information in the officers' possession prior to the arrest." *Id.*

In addition, at the location where these events occurred, any person leaving the parking lot that Loyd was exiting, wishing to get on the entrance ramp to the highway, must immediately cross over into the far lane. The State points us to no statute or ordinance which makes Loyd's actions, in turning into the far lane rather than the lane closest to the intersection, a criminal violation.

Accordingly, we conclude that the officer did not have probable cause in this regard to detain Loyd for a traffic violation that the officer had no knowledge of prior to Loyd's arrest.

### C. Driving On The Center Line

Finally, the State argues that the officer had probable cause to pull over Loyd in light of the fact that his vehicle's tires touched the center line of Front Street prior to the officer pulling him over. We disagree.

At the suppression hearing, the officer testified that prior to pulling over the vehicle, he observed Loyd's car driving "with its right wheels on the center line as it went around the corner." The dash cam video supports that Loyd's tires did touch, but not cross, the white stripes dividing the lanes. This Court has previously held that such a minor deviation does not provide the police probable cause to detain the driver in order to cite him for a traffic violation. "[T]here is extensive case law from numerous jurisdictions holding that slightly crossing over the fog line once or twice for a moment does not, in and of

itself, justify a traffic stop." *State v. Abeln*, 136 S.W.3d 803, 810, n. 7 (Mo.App. W.D.2004) (citations omitted); *see also State v. Mendoza*, 75 S.W.3d 842, 845–46 (Mo.App. S.D.2002) (holding that driving "onto but not over the left yellow line" did not "justify the issuance of a warning," and therefore finding that the police "lacked probable cause or reasonable suspicion to stop Mendoza's vehicle").

Here, prior to pulling him over, the officer admitted that Loyd was not "swerving"; "wasn't driving erratically"; "wasn't speeding"; "wasn't about to strike anything";· and "wasn't straddling two lanes." All Loyd was doing, which is confirmed by the dash cam video, was driving his car with his tires touching the center line. But this, alone, was an insufficient basis to provide the police probable cause to conduct a traffic stop. *Id.*

The State, in its arguments to the trial court and in its brief before this Court, misleadingly uses civil driver's license revocation cases, dealing with the officer's probable cause to believe a defendant is intoxicated, to support its argument. The probable cause for the stop is not relevant to the civil driver's license cases. *Wisdom v. Dir. of Revenue*, 988 S.W.2d 127, 130 (Mo.App. S.D.1999). The cases the State relies on deal only with the probable cause to believe the driver was intoxicated, not the probable cause for the original stop, which is the issue in this case.

The dash cam video clearly establishes that there was no illegal or unusual driving in this case. "The Court may not supply missing evidence, or give the [State] the benefit of unreasonable, speculative or forced inferences. If the evidence is insufficient to sustain a conviction, plain error affecting substantial rights is involved from which manifest injustice must have resulted." *State v. Whalen*, 49 S.W.3d 181, 184 (Mo. banc 2001) (internal

citations and quotation marks omitted). There was no probable cause to stop Loyd.

For all of the aforementioned reasons, we find that the State failed to meet its burden of proof in order to demonstrate that the traffic stop was a justifiable seizure pursuant to the Fourth Amendment. Absent probable cause for the stop, all subsequent evidence should have been suppressed. *Nardone v. United States*, 308 U.S. 338, 341, 60 S.Ct. 266, 84 L.Ed. 307 (1939). Without this evidence, there is no way the State could make a submissible case. We find the ruling of the trial court resulted in a manifest injustice. Therefore, we conclude that the trial court plainly erred in failing to grant Loyd's motion to suppress. Point One is granted.[11]

### Conclusion

The judgment of the trial court convicting Loyd of driving while intoxicated and driving while revoked is reversed, and the case is remanded to the trial court for further proceedings consistent with this opinion. It will then be up to the State to decide how it wishes to proceed.

All concur.

---

11. We do not reach the merits of Loyd's other claims herein in light of the fact that Point One is dispositive of this appeal.